In the Matter of HALDEMAN PIPE & SUPPLY COMPANY, a corporation, Debtor.

No. 22537.

United States Court of Appeals
Ninth Circuit.

Oct. 22, 1969.

As Amended Nov. 28, 1969.

Seth Hufstedler (argued) and Stephen R. Farrand, Beardsley, Hufstedler & Kemble, Los Angeles, Cal. for appellant.

Joseph S. Potts (argued), Santa Ana, Cal., for appellee.

Before HAMLIN and DUNIWAY, Circuit Judges, and SMITH,* District Judge.

RUSSELL E. SMITH, District Judge.

Appellant, an attorney, was denied fees for his representation of a receiver in bankruptcy because of what the referee deemed to be violations of General Order 44. That order requires a receiver to state in his petition the attorney's connections with the bankrupt or debtor or any other party in interest and requires that the receiver make diligent inquiry into the connections of such attorney. If without disclosing the attorney shall have represented any adverse interest, the court may deny his application for fees.

The receiver advised the court that appellant represented no interest adverse to the estate. This advice was based on an affidavit by appellant that he represented unsecured creditors whose interests were identical with those of the receiver and did not represent any adverse interests. The order authorizing the appointment incorporated by reference the application to employ counsel and in effect authorized a general retainer.

At the time the application for authority to employ counsel was filed appellant had been employed to represent several unsecured creditors of Haldeman Pipe & Supply Company (Haldeman), the debtor, including American Radiator and Standard Sanitary Mfg. Company (Amstan). A substantial part of Amstan's claim was guaranteed by Jack Manildi and his wife. Had this fact been

---

* Honorable Russell E. Smith, United States District Judge, District of Montana, sitting by designation.

revealed to the receiver and had he made the inquiry required by General Order 44 he would have discovered that Jack Manildi was president, and with his wife sole stockholder of Haldeman and a second corporation, Santa Monica Plumbing Supply Co.; that there had been intercorporate dealings between the two companies; that on June 7, the day following the appointment of appellant as attorney for the receiver, appellant was asked by Amstan to attach certain real property belonging to Manildi and wife; and that the action on behalf of Amstan out of which the writ of attachment issued was filed by appellant on June 10.

The referee found, and there is evidence to sustain the finding,[1] that appellant's representation of Amstan was adverse to the interests of the receivership by reason of the fact that Manildi's relationships with the debtor were such as to require an investigation of them with a view toward possible actions by the receiver against Manildi.[2] It may be that the receiver in fact had no enforceable claim against Manildi or his property, but the receiver had an obligation to explore that possibility. A purpose to reduce Manildi's property to the possession of the receiver would be adverse to a purpose to subject Manildi's property to the possession of Amstan. This conflict in purposes was sufficient to make appellant's representation of Amstan adverse to his representation of the receiver.[3]

■ The parties have argued at length as to the exact disclosures made to the receiver and referee, the time of the disclosures, and the exact extent of the knowledge of appellant of the adverse nature of his representation. These arguments are not to the point. Appellant's representation of Amstan was in fact ad-

verse and he did not at a time very near the date of his employment declare the full extent of his representation of Amstan. It was his duty to reveal all of his connections with the bankrupt, the creditor or any other parties in interest. Had he made the disclosures then it would have devolved upon the court to determine whether conflicts existed. General Order 44 does not give the attorney the right to withhold information because it is not apparent to him that there is a conflict. If he does not disclose and if his representation turns out to be adverse, then the punitive provisions of General Order 44 may be invoked.[4]

■ Appellant urges that when Congress added subd. c to Section 44 of the Bankruptcy Act, permitting an attorney for general creditors to act for the receiver, it legislatively authorized attorneys to act for a receiver in cases involving actual but unrecognized conflicts of interest. Assuming full disclosures this may be, but if so it is of no aid to the appellant here. The conflict here did not arise because appellant represented general creditors; it arose out of the undisclosed fact that one of those creditors was in a position to and was pursuing property belonging to Manildi in which the receiver had a possible interest. Whatever effect the amendment to section 44 of the Bankruptcy Act may have had, it did not diminish the duty to disclose under General Order 44 and the penalties under that order are assessed not because of the existence of conflict but because of failures to disclose the facts giving rise to it.

■ The petition under Chapter XI was filed May 31, 1963. The order authorizing the employment of appellant was entered on June 6, 1963. On August

---

1. Appellant testified that his representation of Amstan put him on "both sides of the picture" and that it was necessary to have the benefit of "independent counsel".

2. An action which among other things sought to set aside conveyances of property from Haldeman to Manildi was in

fact filed by special counsel and compromised by the payment of $32,000 by Santa Monica to the receiver.

3. In Re H. L. Stratton, Inc., 51 F.2d 984 (2 Cir. 1931), cert. den. 284 U.S. 682, 52 S.Ct. 199, 76 L.Ed. 576.

4. See In Re Rogers-Pyatt Shellac Co., 51 F.2d 988 (2 Cir. 1931).

19, 1963 after an auditor appointed to investigate the relationships between Haldeman, Santa Monica and Manildi had reported possible causes of action against Manildi and Santa Monica Plumbing Supply Co., appellant notified the receiver that he had attached the real property of Manildi on behalf of Amstan and suggested that because of his dual position special counsel be employed to handle any litigation against Manildi or Santa Monica. At that time everything that appellant might have disclosed relative to his adverse interest was disclosed at least to the receiver. Special counsel was employed to represent the receiver in the area in which appellant's representation was adverse. Appellant, after the disclosures, did continue to represent the receiver for many months. General Order 44 does not require that violations of it necessarily result in a denial of fees. The word "may" used in the clause "may deny the allowance of any fee", simply permits a denial.[5] Under the permissive language of General Order 44 the referee may determine whether sanctions should be invoked, and if so the extent of them.

■ The order denying compensation concludes that appellant did violate General Order 44 and with that we agree, but the order then concludes that the violation "requires disallowance of any compensation to which he might be otherwise entitled." With that conclusion we disagree. Had the referee in his discretion and upon an appraisal of all of the arguments made by the parties such as the good faith of the appellant, the extent of his knowledge and the time of full disclosure, denied all fees, we would not be disposed to interfere with that exercise of discretion. The referee apparently believing that the General Order precluded it, failed to accord appellant a right to which appellant was entitled, i. e., the exercise of his discretion.

The order appealed from is reversed and the cause is remanded with directions that the referee appraise the facts in the case and determine, as a discretionary matter, what if any fees should be allowed.

The court reserves the question of what, if any, costs are allowed on appeal until the final determination of the matter of attorneys fees is made by the District Court.

---

5. In In re Woodruff, 121 F.2d 152 (9 Cir. 1941) the majority reserved the problem.