**In re Lew H. THOMPSON, aka Lewis Homer Thompson, aka Lewis H. Thompson, Debtor.**

**In re MILEW, INC., Debtor.**

**Bankruptcy Nos. B80–00921–Y, B80–00922–Y.**

United States Bankruptcy Court, N.D. Ohio.

Oct. 4, 1985.

James H. Beck, Canfield, Ohio, for trustee.

Thomas L. Corroto, Youngstown, Ohio, Trustee.

### FINDING AS TO MOTION FOR AMENDMENT OF JUDGMENT AND FINAL APPLICATION FOR ATTORNEY AND TRUSTEE FEES

H.F. WHITE, Bankruptcy Judge.

On January 21, 1985 this court ruled upon the final application for fees as filed by the attorney for the trustee and the application for compensation as filed by the trustee. The court granted Mr. Beck, as attorney for the trustee, the sum of $6,000 and ordered him to reimburse the estate the sum of $679.62 as he had previously been paid the sum of $6,795.00 on his first interim fee application. The difference in the amount of $115.38 is for expenses allowed by the court. The court allowed Thomas L. Corroto, trustee, the sum of $500.00.

On January 30, 1985 Mr. James H. Beck, as attorney for the trustee, filed a motion, pursuant to Bankruptcy Rule 9023 and Fed.R.Civ.P. 59(a) and (e), to alter or amend the judgment order entered on 21st day of January, 1985 as to the allowance of fees. Mr. Beck alleges in his brief attached to the motion that the order was contrary to law in that the court based its conclusion on findings of facts that were not presented to the court at the hearing held on December 11, 1984. He further indicates in the brief that the court did not take any sworn testimony and relied upon the statements of counsel and the representations made in the itemized statement of Mr. Beck.

The court granted the request for a hearing as Mr. Beck is correct. At the hearing on December 11, 1984 Mr. Beck did appear before this court and represented to this court that he did perform the services as set forth in the itemized statement. The court questioned Mr. Beck regarding several items in the application. The court, therefore, took the statements made by Mr. Beck in open court without oath as Mr. Beck is an officer of the court. The court at the prior hearing did make inquiry of the trustee regarding the services rendered, and the differences that arose between Mr. Beck and the trustee. There is no question that the interim order allowing compensation entered on May 11, 1982 was never paid due to the dispute that arose between the trustee and his counsel.

The court also finds that this court, in its order as to allowance of fees in regard to the interest that was lost through the failure to deposit the funds in an interest-bearing account, computed the lost interest on the $17,273.49 at a minimum rate of 5½ percent per year which would amount to at least $863.67. It appears, however, that the trustee did not have the total sum of $17,273.49 in his possession as on September 16, 1981 as a disbursement of $6,919.34 was made.

A rehearing was granted and a hearing was held on March 12, 1985 at 11:00 A.M. at which time Mr. Beck appeared; the trustee appeared; and several witnesses appeared on behalf of Mr. Beck, being Carl D. Rafoth and Richard T. Davis. Attorney Mark Schlachet, a former bankruptcy judge, also was present as a witness on behalf of Mr. Beck. But the court ruled that since attorney Mark Schlachet, a former bankruptcy judge, had heard this case and granted the order of September 15, 1981 allowing attorney fees in the sum of $6,795.00, and also entered the interim order of May 11, 1982 allowing the sum of $1,770.00 as attorney fees, he was ineligible to appear as a witness in this case.

The court further finds from that testimony that James H. Beck was appointed attorney for the trustee upon an application filed with the court on August 27, 1980 and an order approving the appointment was entered on August 27, 1980 signed by Hon. Joseph Molitoris. In the application the trustee stated: "that to the best of his knowledge the Attorney has no connection with the Debtor, the creditors or any other party in interest and their respective attorneys except none". The court finds that this statement is not true as Mr. Beck did represent a secured creditor, Mendel Kaliff, who was scheduled as a secured creditor in both petitions and schedules filed with the court.

In the first interim fee application filed with this court Mr. Beck indicated that services were rendered on behalf of the trustee commencing on August 22, 1980. However, the court found that he was not retained as attorney in these proceedings until August 27, 1980. In the prior order by this court, the court disallowed services rendered during this period of time on the finding that the services were rendered prior to his appointment. However, from the testimony of Mr. Beck at the March 12, 1985 hearing, the court finds that these services were rendered at the request and on behalf Mendel S. Kaliff.

The court further finds from Mr. Beck's testimony that he has been paid by the creditor for these services rendered. After this fact was discovered by the court, Mr. Beck indicated in his Memorandum filed

with the court on March 19, 1985 that he was withdrawing the request for 10.6 hours of services.

Mr. Beck attached to his memorandum an Exhibit A in which he allegedly wrote a letter to Mr. Mendel S. Kaliff on August 27, 1980 informing him that he was withdrawing his representation because he had been retained by the trustee in these proceedings. This letter was never presented to the court at the hearing. The court finds, however, that on the time sheets submitted to the court there are charges on August 29, 1980 for telephone conferences with M. Kaliff, and there was another telephone conference with M. Kaliff on September 2, 1980 regarding a status report. Exhibit E.

The court further finds that Mr. Beck on September 11, 1980 filed a proof of claim in the Milew, Inc. case on behalf of Mendel S. Kaliff, which was signed by James H. Beck as attorney on behalf of the client in the amount of $70,000.00. On the same date a similar proof of claim was filed in the Lew Thompson case by Mr. Beck as counsel for Mendel Kaliff. Mr. Beck indicated to the court that he did this as a favor and did not intend to charge Mendel Kaliff for this service. The court finds that time sheets submitted to the court for services rendered to the trustee have typed on them the name of the client, Kaliff.

Mr. Beck admitted that he was hired by Mendel S. Kaliff to ascertain whether certain assets had come within the jurisdiction of the bankruptcy court in the Youngstown area as the debtor was on the carnival circuit and would have been in the Youngstown area over the Labor Day holiday for a fair to be held in Canfield, Ohio.

The court did recompute the computation of interest loss. As of September 2, 1980 there was a balance of $15,419.00 in the estate. This balance remained the same until March 3, 1981 when it was increased to $15,567.65; the balance was then increased on April 29, 1981 to $16,181.49. The balance remained at this figure until September 15, 1981 when it was increased to $17,042.49. During this entire period of time, no interest was earned on the funds as the funds were not placed into an interest bearing account. Therefore, at five and one-half percent interest up to September 15, 1981 had these funds been deposited in an interest bearing account they would have earned a minimum of $905.54. On September 16, 1981 the interim fee application was paid leaving a balance of $10,123.15. This amount was maintained in a noninterest bearing account until August 6, 1982 when a deposit of $150.00 was made, making a balance of $10,273.15. This amount remained the same until the closing of the case. Had these funds been deposited at a minimum of 5.5 percent, it would have brought the total estimated interest loss to $1,954.95. Therefore, the court corrects its former finding. However, this is a conservative estimate as during this period of time banks were paying 12 to 16 percent interest on certificates of deposit and 9 to 10 percent on time-called accounts. It should have been obvious to the trustee and to his counsel, because of the litigation pending in the court, that a higher rate of interest could have been earned.

The court finds from the testimony that Carl D. Rafoth and Mr. Davis allege that James H. Beck is knowledgeable in the field of bankruptcy law and that he has practiced before the bankruptcy court for a number of years. Both attorneys are standing trustees on the panel established by the Administrative Office in Washington. They stated that it had been the practice in the Bankruptcy Court in Youngstown, Ohio that the trustee's attorney would handle the checking account, handle deposits, prepare the trustee's report, and make bank reconciliations, and the estate would be charged for this work as legal services.

The court further finds that Mr. Corroto did not seek Mr. Beck as an attorney. On August 27, 1980 Mr. Beck, knowing the debtors were involved in bankruptcy proceedings, requested Mr. Corroto to appoint him as trustee's counsel in these proceedings as he was familiar with the debtor's operation. There was no evidence by Mr.

Beck or Mr. Corroto that bankruptcy judges Molitoris or Schlachet were aware of the representation of Mr. Kaliff by Mr. Beck prior to Mr. Beck's appointment as attorney for the trustee. No evidence was presented to the court that Mr. Corroto went to the fairgrounds to make a determination as to the location of the assets of the debtor. He left those duties to Mr. Beck and members of his staff.

## ISSUE

The issue for this court to determine is whether to allow the fee application as filed or make a substantial reduction based upon the new evidence presented to the court.

## DISCUSSION OF LAW

■ An attorney seeking a fee in bankruptcy matters has a fiduciary obligation to the court. *In re Arlan's Dept. Stores, Inc.*, 615 F.2d 925, 941 (2d Cir.1979). An attorney " 'who seek[s] appointment as counsel for an officer of the court owe[s] the duty of complete disclosure of all facts bearing upon their eligibility for such appointment.' " *In re Futuronics Corp.*, 655 F.2d 463, 469 (2d Cir.1981) (quoting *In re Rogers-Pyatt Shellac Co.*, 51 F.2d 988, 992 (2d Cir.1931)). This court is in agreement with the witness for Mr. Beck, attorney Carl D. Rafoth, as to his testimony that an attorney representing a trustee in the collection of assets for the estate must abide by "a higher standard and degree of fiduciary duty" than in a normal collection matter. Beck, Memorandum of closing argument at 5. The famous words of Judge Cordozo best describe this fiduciary duty: "Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior." *Meinhard v. Salmon*, 249 N.Y. 458, 464, 164 N.E. 545, 546 (1928).

■ The trustee is authorized, subject to the court's approval, to employ an attorney to assist him in carrying out his duties, subject to the following limitations [1]:

(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

. . . . .

(c) In a case under chapter 7 or 11 [of] this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, but may not, while employed by the trustee, represent, in connection with the case, a creditor.

11 U.S.C. section 327(a) and (c). The concurrent representation of the trustee and a creditor, irrespective of whether or not an actual conflict of interest exists, is specifically prohibited by subsection 327(c). 2 *Collier on Bankruptcy*, para. 327.03[4] (15th ed. 1985); *In re Roberts*, 46 B.R. 815, 823 (Bankr.D.Utah 1985) and *In re Fondiller*, 15 B.R. 890, 892 (Bankr. 9th Cir.1981). An attorney serving as general counsel for the trustee, and at the same time serving as counsel for a creditor in the same case, must make decisions on behalf of his clients which are ripe with potential conflicts:

It should be borne in mind that general counsel for the trustee, in order to accomplish a maximum distribution to creditors, usually must perform services that are adverse to certain individual creditors. For example, creditors' claims should be reviewed to determine which should be disputed, or an investigation of

---

1. Subsection 327(c) was amended by Pub.L.No. 98–353, sect. 430(c) to read as follows:

In a case under chapter 7 or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor, in which case the court shall disapprove such employment if there is an actual conflict of interest.

The requirement that there be an "actual conflict of interest" is effective for applications filed within cases filed after October 7, 1985. Pub.L. No.98–353, sect. 553(a).

pre-bankruptcy transactions between the debtor and individual creditors might be conducted for the purpose of determining whether a preference has occurred. An attorney representing the trustee as general counsel would be required to give legal advice and to proceed with appropriate litigation in connection with these matters. Any number of possible conflicts can be envisioned.

*Id.* There should be no opportunity for the exercise of conflicting interests nor even the appearance of dual loyalty. *In re Codesco, Inc.,* 18 B.R. 997, 999–1000 (Bankr.S. D.N.Y.1982). The purpose of the disinterestedness requirement of subsection 327(a) is to prevent even the appearance of conflict. *Id.* at 999. Canon 9 of the Code of Professional Responsibility states that: "A Lawyer Should Avoid Even the Appearance of Professional Impropriety." *See also,* Model Code of Professional Responsibility DR 5–105(A), 5–105(B), and 5–105(C), and EC 5–15. The court may deny compensation if it finds a violation of professional ethics. *In re Roaring Creek Mining Co., Inc.,* 51 B.R. 866, Bankr.L.Rep.(CCH) Para. 70,693 (Bankr.E.D.Tenn.1985).

■ While Mr. Beck was retained as general counsel to the trustee, he filed two proofs of claim on behalf of Mendel S. Kaliff. Mr. Kaliff's name appears repeatedly on the professional time records of Mr. Beck and another member of his firm in connection with the bankruptcy

matter of Milew, Inc. and "bankruptcy" generally after his appointment as general counsel to the trustee. *See* Exhibit E. Many of the entries clearly relate to duties of the trustee in the administration of the estate. *See, e.g.,* charge on August 28, 1980 by Mr. Beck for preparation of the Report of Interim Trustee and Order Authorizing Trustee to Reject Lease. *Id.* The court having heard all the testimony, and having had the opportunity to observe the demeanor of the witnesses, finds this to be more than clerical error. An attorney may not serve two masters. Subsection 327(c) prohibits it. Attorney fees may be denied the applicant if his employment presents an inherent conflict of interest. *In re Georgetown of Kettering, LTD.,* 750 F.2d 536 (6th Cir.1984).

■ Failure to disclose the facts giving rise to a conflict of interest are grounds for denial of compensation wholly apart from the act of representing conflicting interests. *In re Guy Apple Masonry Contractor, Inc.,* 45 B.R. 160, 163 (Bankr.D. Ariz.1984). Suggested Interim Bankruptcy Rule 2006 [2] is controlling and sets the standard for the discussion of conflicting interests:

An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professional persons pursuant to § 327 or § 1103 of the Bankruptcy Code shall be made only on application of the trustee or commit-

---

**2.** The Milew, Inc. case was commenced on August 12, 1980 and the Lew H. Thompson case was commenced the same day. The two cases were consolidated for joint administration by an order entered August 29, 1980. The Interim Rules were designed to meet the substantive and procedural changes mandated by the Bankruptcy Reform Act of 1978. The former Rules of Bankruptcy Procedure which were not inconsistent with the Act also remained applicable. Rule 215(a) of the Rules of Bankruptcy Procedure states in pertinent part:

(a) Conditions of Employment of Attorneys and Accountants. No attorney or accountant for the trustee or receiver shall be employed except upon order of the court. The order shall be made only upon application of the trustee or receiver, stating the specific facts showing the necessity for such employment, the name of the attorney or accountant, the reasons for his selection, the professional ser-

vices he is to render, and to the best of the applicant's knowledge *all of the attorney's* or accountant's *connections with* the bankrupt, *the creditors,* or any other party in interest, and their respective attorneys and accountants.

(Emphasis added). Since prior applications for appointment and compensation were submitted under these two sets of rules, the court will not apply the new Bankruptcy Rules which took effect August 1, 1983. All relevant rules require disclosure of the attorney's connections with the creditors of the estate.

Rule 215(b) of the Rules of Bankruptcy Procedure provides that if an attorney employed by the trustee represents any interest adverse to the estate, the court may deny the allowance of his compensation. Since Rule 215(c) conflicts with the express provisions of 11 U.S.C. section 327(c) it is superceded by that section.

tee, stating the specific facts showing the necessity for such employment, the name of the person to be employed, the reasons for his selection, the professional services to be rendered, and to the best of the applicant's knowledge *all of such person's connections with* the debtor, *the creditors,* or any other party in interest, and their respective attorneys and accountants.

(Emphasis added). A law firm representing the trustee or debtor in possession pursuant to subsection 327(a) has an affirmative duty to disclose any potential conflict of interest to the court so that the court may rule upon that issue. *In re B.E.T. Genetics, Inc.,* 35 B.R. 269, 273 (Bankr.E.D.Calif.1983) (citing Interim Rule 2006). *Accord, In re D.H. Overmyer Telecasting Co., Inc.,* 29 B.R. 647, 650 (Bankr.N.D.Ohio 1983) (citing Bankruptcy Rule of Procedure 215(a). *See also, In re Jensen-Farley Pictures, Inc.,* 47 B.R. 557, 579 (Bankr.Utah 1985) (those seeking appointment as professional persons in bankruptcy cases owe the duty of complete disclosure of all facts bearing upon their eligibility for such appointment), and *Roaring Creek Mining Co., Inc.,* 51 B.R. 866, CCH para. 70,693 at 87,532 (the court must have an opportunity to decide if the attorney is representing an adverse interest before he renders services to the estate). This court is guided by the well-reasoned opinion in *In re Guy Apple Masonry Contractor, Inc.,* 45 B.R. 160 (Bankr.D.Ariz.1984). Failure to disclose the facts giving rise to a conflict of interest are grounds for denial of compensation. Full disclosure requires disclosure of any connection which *may* have a bearing on the attorney's or law firm's ability to represent the trustee free of any conflict or adverse interest. " 'If the rule [of complete disclosure] is to have vitality and the evils against which it is aimed are to be eliminated, it should be enforced literally,' " and counsel who has failed to comply with the disclosure requirement should be denied compensation. *Futuronics Corp.,* 655 F.2d at 469. It matters not that the original application for appointment of counsel was filed by the trustee. In fact, the application for appointment of general

counsel to the trustee was prepared by Mr. Beck and appears on his first application for attorney fees filed August 11, 1981. The attorney appointed to represent the trustee as general counsel has an independent duty to disclose these facts as he only is in the position to make the initial disclosure.

 Mr. Beck did not disclose to the court that he represented a creditor of both estates until this fact was inadvertently disclosed by Mr. Beck upon the court's examination of him at the hearing held on December 11, 1984. The court's own inquiry as to the inclusion of services rendered by Mr. Beck, purportedly on behalf of the trustee, prior to his appointment as general counsel for the trustee by the order of August 27, 1980 disclosed this adverse interest. That Mr. Beck later admitted that he had already been paid for these services rendered to the creditor, and that he withdrew his request for the related 10.6 hours of services does not cure this breach of duty to disclose. Although Mr. Beck claims he ceased to represent Mendel Kaliff on August 27, 1980, he admits filing two proofs of claim on his behalf in the very estates to which he was appointed general counsel for the trustee. The time sheets that Mr. Beck submitted to the court with his application for compensation include several client charges for services rendered Kaliff on bankruptcy matters *after* his appointment as general counsel. The court can only conclude that not only did Mr. Beck fail to meet his affirmative duty of prior and unsolicited full disclosure of all facts bearing upon his eligibility for appointment as general counsel for the trustee, but also that his representation of Mendel Kaliff under the Code and applicable bankruptcy rules presents an actual conflict of interest. Accordingly, all compensation shall be denied Mr. Beck for his representation as general counsel to the trustee. In addition, the undisputed evidence discloses that the attorney performed some of the duties ordinarily performed by the trustee of the estate, i.e. collection and examination of assets, handling the checking account, preparing the trustee's report, etc. The prior compensa-

tion allowed Thomas L. Corroto as trustee in the sum of $500.00 will be disallowed as well. The trustee performed no services benefitting the estate and shall be consequently denied compensation. It was the affirmative duty of Mr. Beck to disclose all facts bearing upon his eligibility for appointment as general counsel, and he alone had full knowledge of the facts regarding his adverse interest to the estate. The court will, therefore, affirm its prior allowance of compensation for the services and expenses of Gary M. Gilmartin, an associate in the firm, in connection with his prosecution of the adversary complaint on behalf of the estate in the combined total of $1,980.76.

As Mr. Beck has already been paid the sum of $6,795.00 [3] according to a prior order of this court, he is ordered to reimburse the estate the sum of $4,814.24 being the amount of prior compensation less allowed compensation for the services and expenses of Gary M. Gilmartin. A separate order shall issue hereon.

---

**3.** The court notes as well the excessiveness of the compensation as applied for by the attorney for the trustee. The attorney fees and expenses requested are the sum of $11,337.22; the maximum sum on deposit for the estate was the sum of $17,042.49. Mr. Beck states in his final application for compensation that his efforts have benefitted the estate in the sum of $10,273.15, less than the amount of fees which he seeks to collect from the estate.