**In re MARINE POWER & EQUIPMENT CO., INC.; Washington Steel Industries, Inc.; International Offshore Services, Inc.; Alaska Marine Towing, Inc.; Marine Logistics Corporation; Seaway Express Corporation; the 76 Corporation, WFI Industries, Inc.; Propulsion Systems, Inc.; Gulf Stevedoring, Inc.; Global Maritime Services, Inc.; Sea-Alaska Terminals, Inc.; Services Specialties, Inc., Debtor.**

**Bankruptcy No. 86–01091.**

United States Bankruptcy Court, W.D. Washington.

Nov. 4, 1986.

---

3. The parties, pursuant to 28 U.S.C. § 157(c)(2), have consented to entry of judgment by this Court.

Alan Zarky, Seattle, Wash., for applicant.

Karen J. Vanderlaan, Helsell, Fetterman, Matin, Todd & Hokanson, Seattle, Wash., Jonathan M. Landers, Gibson, Dunn & Crutcher, San Francisco, Cal., for Indus. Indem., Objecting Creditor.

## MEMORANDUM DECISION

SIDNEY C. VOLINN, Bankruptcy Judge.

The central issue considered here is the conflict of interest problem attending representation of dual or multiple parties by bankruptcy counsel; in this case, the debtor corporation and its officers are co-defendants in a criminal proceeding.

## I. THE APPLICATION FOR FEES

Before the court is the application of attorney Dan R. Dubitzky seeking allowance and payment of interim fees and costs for representation of the debtor in possession, Marine Power & Equipment Company, Inc. ("MP & E"). The application results from his appointment as special counsel for the debtor in possession by order of this court entered March 25, 1986, "in connection with the assertion by the United States Government of criminal violations of federal laws relating to the Environmental Protection Act and equivalent state laws, upon such compensation as the Court may hereafter fix after appropriate application by such counsel." The violations alleged to have been committed by MP & E involve some 115 incidents occurring from 1981 to 1985.

Chapter 11 petitions for MP & E and its subsidiaries were filed on and after February 14, 1986. (The cases were consolidated by order dated March 4, 1986.) The *ex parte* motion for appointment of special counsel filed on March 25, 1986, was supported by the affidavit of Wallace Aiken, of Aiken, St. Louis and Siljeg, counsel for the debtor in possession, which stated that the United States government "has asserted or may assert criminal violations by the Debtor Corporation of federal laws relating to the Environmental Protection Act and equivalent state laws. [Mr. Dubitzky has] been representing the Debtor in connection with these matters and is conversant with the matters and it is fit and appropriate for the protection of the Debtor that said counsel be retained as Special Counsel for the above purposes." The order was entered on March 25, 1986, without notice, on presentation by counsel for the debtor in possession.

A Revised Notice of Petition for Interim Compensation prepared by Aiken, St. Louis & Siljeg, dated May 29, 1986, and filed June 2, 1986, advised all creditors and other interested parties in the consolidated cases that interim compensation for all of the debtor in possession's counsel would be sought at a June 26 hearing. With respect to Mr. Dubitzky, the notice stated that he would be seeking "fees and expenses in the approximate amount of $30,000" and that additionally he would request payment of a retainer "for services to be rendered in the future" in the amount of $25,000.

However, Mr. Dubitzky's Motion for Order Authorizing and Directing Payment of Interim Fees and Costs sought fees of $11,991.25 and costs of $210.42 for the period from March 18, 1986, to May 30, 1986. Mr. Dubitzky prepared the application and supporting documentation and forwarded it to Aiken, St. Louis, and Siljeg which filed it on June 23, 1986.

The following is taken from the declaration of Mr. Dubitzky filed in support of that application:

1. Mr. Dubitzky had represented MP & E since February 24, 1985, commencing with proceedings regarding the lawfulness of a search warrant executed upon MP & E premises.

2. On March 26, 1986, the United States Government served subpoenas *duces tecum* upon four officials of MP & E in their capacity as custodians of corporate records. These officials were: Richard C. Woeck, President; Peter Woeck, Jr., Vice President; Sally Bergman, Secretary; and Paul Megale, Comptroller. In response to these subpoenas, "Careful

analysis of the complex law regarding the Fifth Amendment privilege of the corporate custodians was undertaken." (It should be noted that later briefing filed by Mr. Dubitzky in support of compensation for services rendered before March 25, states that the subpoenas had a *return date* of March 26.)

3. On May 8, 1986, MP & E, Richard C. Woeck, Peter Woeck, Jr., Lloyd Anderson and Frank Brady were indicted in a 115 count indictment.

4. Mr. Dubitzky describes his joint representation of MP & E and its president, Richard Woeck, and a retainer from, and fee agreement with, Mr. Woeck:

> On June 2, 1986, I appeared as counsel for Marine Power and Equipment Company, Inc. and Richard C. Woeck in connection with the case of *United States of America v. Richard C. Woeck, Marine Power and Equipment Company, Inc.,* et al.
>
> On June 2, 1986, I obtained a retainer from Richard C. Woeck, President of Marine Power and Equipment Company, Inc., in connection with services rendered on behalf of him *personally* in *United States of America v. Richard C. Woeck* et al. I have agreed with Mr. Woeck that he will be reimbursed for all fees paid to this counsel by the court from May 8, 1986, forward. It is my opinion that every action performed on behalf of the debtor will benefit Richard Woeck and vice versa. (emphasis in original)

## II.  OPPOSITION TO APPLICATION

Mr. Dubitzky's application was met with objections from several creditors, including the creditors' committee of Marine Logistics, Inc., one of the consolidated cases, certain creditor employee retirement trusts, Mr. John Dorsett (a $7100 merchant seaman wage claimant), and Industrial Indemnity Company, a secured creditor of MP & E and its subsidiaries. Counsel for the MP & E creditors' committee was appointed by order of this court on March 28, after Mr. Dubitzky's appointment as spe-

cial counsel to the debtor. That committee filed its Objection to Appointment of Counsel on June 23.

Because of the questions which arose at the initial fee hearing on June 26, it was continued until a date after further briefing of certain issues by Mr. Dubitzky and the objecting parties. In a subsequent brief filed by Mr. Dubitzky in support of his fee application, he contends that he did not represent Mr. Woeck before June 2, and that although some services performed before that date may have benefited Mr. Woeck, a reduction of fees would not be appropriate on that basis. Nevertheless, Mr. Dubitzky states without further comment or reasoning that because it is impossible to allocate his work from May 8 to June 2 between MP & E and Mr. Woeck "the most equitable solution would be to split the fees."

The application filed by Mr. Dubitzky on June 23, had requested compensation of $11,991.25 for fees from March 18, 1986, to May 30, 1986, and costs of $210.42. According to his later brief, his request is now for full compensation for the period of March 18 through May 7—$8,185.12—and half compensation for the period May 8 through May 30—$2,008.27—for total compensation of $10,193.39.

In addition to opposing the fee application on the grounds of a conflict of interest, Industrial Indemnity also argues in the alternative that fees for the period prior to March 25, 1986, should be disallowed because they were incurred prior to the application and order for employment of Mr. Dubitzky. No dollar amount has been set forth in pleadings for the value of those services, but it includes 24.25 hours of Mr. Dubitzky's time.

At a continued hearing on July 17, Mr. Aiken, attorney for the debtor in possession, announced that Mr. Dubitzky had withdrawn from his representation of MP & E in connection with the criminal indictment. He also stated that MP & E had hired an "in house" salaried attorney, Ruth Nelson, to represent MP & E in other matters. On July 25, this court entered an

order authorizing the withdrawal of Mr. Dubitzky and stating that

> This court has no objection to the substitution of General Counsel Ruth Nelson as attorney for the Debtor in the federal criminal proceedings, but finds it unnecessary to approve any application for employment as to Ms. Nelson under Rule 2014(a) since it has been represented to the court that Ms. Nelson is a salaried employee and will not be seeking any order for compensation as to services rendered in the criminal proceedings.

## III. DUTY OF DISCLOSURE OF CONFLICTS OF INTEREST

### A. General Discussion

11 U.S.C. § 327(e), made applicable to debtors in possession by 11 U.S.C. § 1107, provides for employment of attorneys by a bankruptcy estate "if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed."

Section 328(c) provides a penalty for conflicts of interest:

> (c) Except as provided in section 327(c), 327(e), or 1107(b) of this title, the court may deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section 327 or 1103 of this title if, at any time during such professional person's employment under section 327 or 1103 of this title, such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed.

The anti-conflict of interest sections of the Bankruptcy Code are based on a policy designed to avoid the potential for conflicts of interest, by "requir[ing] that parties and their attorneys not only avoid conflicts, but be above suspicion." *In re Roberts*, 46 B.R. 815, 838 (Bankr. Utah 1985).

Bankruptcy Rule 2014(a) concerning employment of professional persons requires disclosure of:

> the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for his selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, or any other party in interest, their respective attorneys and accountants.

Attorneys who seek employment under the Code and "who are aware that they *may be* involved in actual or potential conflicts of interest must disclose those facts to the court." *In re Roberts, supra,* 46 B.R. at 839. (emphasis added).

> Attorneys who seek appointment ... owe the duty of complete disclosure of all facts bearing upon their eligibility for such appointment. If that duty is neglected, however innocently, surely they should stand no better than if it had been performed ... If the rule is to have vitality and the evils against which it is aimed are to be eliminated, it should be enforced literally.

*Matter of Arlan's Department Stores, Inc.,* 615 F.2d 925 at 933 (2nd Cir.1979), quoting *In re Rogers-Pyatt Shellac Co.,* 51 F.2d 988, 992 (2nd Cir.1931). A law firm may not "ignore its obligation to advise the court so that the court might make the determination of propriety based on the circumstance of the case." *Matter of Arlan's Department Stores, Inc., supra,* 615 F.2d at 936.

> This Court has made it clear that it has no duty to search the file to determine for its self that a prospective attorney is not involved in actual or potential conflicts of interest. It is the attorney's duty to so inform the court.

*In re Roberts, supra,* 46 B.R. at 839.

"The animating principle here is the fiduciary obligation owed by counsel for the debtor to the bankruptcy court." *Matter of Arlan's Department Stores, Inc., supra,* 615 F.2d at 937. "[A]n attorney seek-

ing a fee in a bankruptcy matter does have a fiduciary obligation to the court." *Id.* at 941.

■ Lack of disclosure of relevant information necessary for an informed ruling on a debtor's application for the employment of an attorney is grounds for the denial of a fee application. *See In re Thompson*, 54 B.R. 311, 315–16 (Bankr.N.D. Ohio 1985); *In re Coastal Equities, Inc.*, 39 B.R. 304 (Bankr.S.D.Cal.1984).

■ Rule 1.7(a) of the Rules of Professional Conduct adopted in Washington State, requires that an attorney make disclosure to a client of any adverse interest held by such attorney, particularly in cases of multiple representation.[1] *See also* ABA Model Rules of Professional Conduct, Rule 1.7(a). The rule is clear that disclosure should be made at the time conflict, or its potential, is discerned. Delay in disclosure can only frustrate its purpose.

The duty of disclosure incumbent on an attorney as an officer of the court, under the Rules of Professional Conduct and in accordance with the anti-conflict provisions of the Code takes on special meaning in the bankruptcy context where attorneys are representing debtors who are equivalent to trustees acting in a fiduciary capacity on behalf of the creditors in the case. 11 U.S.C. § 1107(a). "[P]ersons who seek compensation for services or reimbursement of expenses do so as officers of the court and, as such, are held to fiduciary standards." *In re Coastal Equities, Inc., supra,* 39 B.R. at 309.

It appears from the facts, summarized above, that counsel did not perceive a possible conflict of interest as it involved the debtor, the debtor in possession, and the corporate officers.

### B. The Fifth Amendment Privilege

Mr. Dubitzky argues that there was no conflict of interest until June 2, the date of his $25,000 retainer from Mr. Woeck; moreover, he did not request fees for any services after May 30. He acknowledges, however, that he undertook analysis of law regarding the Fifth Amendment privilege of corporate custodians immediately upon the service of the subpoena *duces tecum* in March. At that point, if not sooner, he knew that the corporation's officers, particularly its chief executive officer, Mr. Woeck, would be involved in any prosecution of the corporation. Thus, he would have been aware that someone would be needed to represent Mr. Woeck and the other officers in the criminal proceedings.

In his motion for interim fees and costs, Mr. Dubitzky states that in response to the March 26, 1986 subpoenas,

> Careful analysis of the complex law regarding the Fifth Amendment privilege of the corporate custodians was undertaken. I engaged in extensive negotiations with the government in order to avoid a lengthy court battle regarding the legal sufficiency of the subpoenaes. A compromise was reached and the subpoenaes for each of the corporate officers were withdrawn and a non-officer employee was substituted as custodian.

1. Rule 1.8 CONFLICT OF INTEREST; GENERAL RULE

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

(1) The lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

(2) Each client consents in writing after consultation and a full disclosure of the material facts (following authorization from the other client to make such a disclosure).

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) The lawyer reasonably believes the representation will not be adversely affected; and

(2) The client consents in writing after consultation and a full disclosure of the material facts (following authorization from the other client to make such a disclosure). When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the *implications of the* common representation and the advantages and risks involved.

A corporation is not a "person" entitled to claim the Fifth Amendment's privilege against self-incrimination. Therefore, a corporate officer cannot refuse to testify or produce corporate documents on the ground that he may thereby incriminate the corporation. 9A W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 4671 (rev. perm. ed. 1985); *Hale v. Henkel,* 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906); *Baltimore & Ohio Railroad Co. v. Interstate Commerce Commission,* 221 U.S. 612, 31 S.Ct. 621, 55 L.Ed. 878 (1911); *Curcio v. U.S.,* 354 U.S. 118, 77 S.Ct. 1145, 1 L.Ed.2d 1225 (1957). There is a distinction between individuals acting as corporate officers and individuals in their *personal* capacity; in their *personal* capacity they may be entitled to invoke the privilege against self-incrimination. *See Curcio v. U.S., supra.*

A Fifth Amendment plea by a corporate officer necessarily attends his personal interest. This interest however is not necessarily congruent with that of the corporation. While such a plea might be in the corporate interest, it might also be of indifference to, or of disservice to that interest. The attorney who advises a person to claim the Fifth Amendment privilege assumes to act for the individual. That attorney, when simultaneously representing the corporation, is serving two masters.

The objection of the MP & E creditors' committee to appointment of counsel demonstrates the difference in perspective which attends representation of corporate and individual interests in the context of this case. The objection *inter alia,* contends that the debtor in possession should seek to enjoin prosecution (presumably by the United States) *of the debtor* because any fine against the debtor would be subordinate even to general unsecured claims, pursuant to 11 U.S.C. 726(a)(4), and would be paid in so subordinate a priority that defense against a claim of such low priority (if not prosecution thereof) would be unproductive. Because of their preoccupation with the primary issue of dual representation, this important issue has not as yet been addressed by counsel.[2]

Mr. Dubitzky necessarily was aware of the need for legal representation not only for the corporate debtor but also for Mr. Woeck and the other corporate officers ever since he undertook representation of MP & E one year earlier. Because the application seeking his employment was submitted on the eve of the return date of the subpoenas, Mr. Dubitzky presumably was aware on that date and thereafter of the potential conflict and the Fifth Amendment issues affecting Mr. Woeck and the other corporate officers.

It is unlikely that Mr. Woeck would not have availed himself of the advice of legal counsel before June 2. No other counsel for Mr. Woeck involved in the proceedings or appearing for him have been identified in pleadings or at hearings in connection with this fee application. It appears from the foregoing and the record before us, including Mr. Dubitzky's invoices[3] for his services submitted in support of his application, that for some time prior to June 2, 1986, Mr. Woeck was advised by Mr. Dubitzky. The record discloses the following concerning Mr. Dubitzky's representation:

> *March 18, 1986 to March 24, 1986*
> —According to his application for appointment, Mr. Dubitzky began representing MP & E on February 24, 1985, one year before the bankruptcy filing, in connection with proceedings regarding a search warrant executed on MP & E. Nothing in the record, prior to the fee application of June 2, 1986, discusses this representation or discloses representa-

---

**2.** A fine might not be the only adverse consequence for the corporate debtor. There has been some reference to debarment, a procedure which, if pursued, might result in refusal by government agencies to award future contracts to the debtor.

**3.** The invoices were placed under seal by the clerk of the bankruptcy court pursuant to order of this court obtained upon the *ex parte* motion of Mr. Dubitzky, for the purpose of protecting references to his research and strategies and other sensitive information from public disclosure.

tion of any other party by Mr. Dubitzky during this period. Mr. Dubitzky's time records begin with March 18, 1986. On that date and March 19, 20, 21, and 24, prior to presentation of the application for his employment, he expended some 24 hours, virtually all of it for research on the Fifth Amendment privilege of debtor's officers.

*March 25, 1986 to April 18, 1986*—Mr. Dubitzky's time records filed in support of his application for compensation disclose many calls and extensive research concerning the subpoenas issued to the "corporate records custodian", the assertion of a privilege by the subpoenaed individuals, and the substitution of alternative custodians. According to pleadings in support of Mr. Dubitzky's fee application, a non-officer custodian was substituted. This individual was apparently not represented by Mr. Dubitzky as his time records for March 28, 1986, indicate an entry for "attempts to arrange fees for custodian's attorney."

*May 5, 1986 to May 30, 1986*—The indictment of the corporation and four individuals was issued on May 8. The time records indicate meetings by Mr. Dubitzky with the named individuals "re: indictment penalties, obtaining counsel, arraignment, etc."; "meeting with Woecks re: corporate liability vs. personal liability"; and a call and letter "re: fees for representing corporation"; all before arraignment on May 15, 1986. An entry on May 16, references "proposed co-counsel" and May 21 and May 28 calls respectively "re: counsel" and "re: co-counsel."

From May 22 to the end of the month, there was "research re corporate liability," a status hearing before a magistrate "re: counsel for corporation and Woecks," a meeting with Richard Woeck "re: representation of corporation" and a call with what appears to be another attorney "re: representation of corporation and officers."

This culminated with the drafting of a fee agreement on May 29, 1986, presumably the fee agreement entered into by Richard Woeck as an individual. Another entry for May 29, references calls with three other individuals, apparently attorneys, "re: joint defense meeting."

From these entries it appears that a distinction had already arisen, at least in Mr. Dubitzky's mind, between representation of the corporation and of its officers as individual clients.

We can only infer that Mr. Dubitzky was indeed advising various corporate officers, including Richard Woeck, as to personal liability and acting on their behalf before and after the indictment. Although the time records and statements by Mr. Dubitzky at the hearing on his application show that other counsel became involved on behalf of some of the co-defendants, Mr. Woeck did not have separate counsel. It also appears that this court is not alone in examining the issue of representation in *U.S. v. Woeck, et al.* based upon the language in Mr. Dubitzky's records indicating a status conference on May 22, 1986, before the magistrate on precisely that issue.

It appears that there was dual representation by Mr. Dubitzky of MP & E and Richard Woeck in the criminal proceedings, for some time prior to his appointment as counsel for the corporate debtor without disclosure of such representation having been made in the application for his appointment.

Mr. Dubitzky's failure to make appropriate disclosure thereby precluded an informed decision concerning the potential for conflict which might attend his appointment and continuing representation of the corporate debtor.

In any context, dual representation and potential conflicts are to be brought to the attention of the clients involved. This obligation of necessity devolves upon the attorney involved.

But in the initial stages of an investigation, who is to catalyze consideration of the possibility of separate representation for those who are called or interviewed? ...

\* \* \* \* \* \*

A catalyst is needed to alert those threatened by the criminal process to the need for individualized, and independent, representation. With no judge involved the only possible catalysts are the attorney retained on a multiple representation basis and the prosecutor.

\* \* \* \* \* \*

That multiple representation may be appropriate does not excuse defense counsel from raising the question of a possible conflict with the clients involved in the multiple representation. The clients then may object or consent to the multiple representation.

*U.S. v. Turkish,* 470 F.Supp. 903, 908 (S.D. N.Y.1978).

Mr. Dubitzky should have been aware of either a real or potential conflict in the representation of Mr. Woeck and MP & E from well before the date of the application for his employment. He failed to disclose the nature and extent of the relationship among himself, MP & E and its principals, including Mr. Woeck, at the time of the application. Had he made the disclosure at the beginning of his employment by the debtor in possession in these bankruptcy proceedings, "it would have devolved upon the court to determine whether the conflict existed." *Matter of Arlan's Department Stores, Inc., supra,* 615 F.2d at 932, quoting *In re Haldeman Pipe & Supply Co.,* 417 F.2d 1302, 1304 (9th Cir.1969). There was a further and continuing failure by him to bring the conflict to the attention of the court.

### C. Disclosure of Compensation From Other Parties

■ Attorneys may not accept compensation from any other party without the client's consent. Washington State Rules of Professional Conduct, Rule 1.8(f). *See also* ABA Model Rules of Professional Conduct, Rule 1.8(f). The Code requires disclosure to the court of the receipt of such compensation. 11 U.S.C. § 327. Here, no disclosure was made of the retainer of $25,000 received from Mr. Woeck on June 2 and the terms of the fee agreement until Mr. Dubitzky's fee application was filed

and it was made only because he sought approval of his fees and costs and an interim disbursment. Even then, the fee application was not filed until June 23, although the retainer from Mr. Woeck was received three weeks earlier.

■ Moreover, Mr. Dubitzky's agreement to reimburse Mr. Woeck for fees incurred subsequent to May 8, from funds to be obtained from the estate, provides at least the appearance of a corporate officer having effected an arrangement for payment of, or contribution to, his personal legal fees from the bankruptcy estate. Aside from any actual conflict arising from such an agreement, there is an appearance of impropriety and detriment to creditors attendant to such an agreement. *See In re WPMK, Inc.,* 42 B.R. 157 (Bankr. Hawaii 1984); *In re Bergdog Productions of Hawaii, Inc.,* 7 B.R. 890 (Bankr. Hawaii 1980). An appearance of impropriety, in and of itself, may justify a court denying compensation. *Matter of King Resources Co.,* 20 B.R. 191, 204 (D.Colo.1982).

### IV. ACTUAL CONFLICTS OF INTEREST

#### A. Compensation From Other Parties

■ The receipt of compensation from a party other than the debtor constitutes a conflict which may warrant denial of compensation by the court. In *In re WPMK, Inc., supra,* 42 B.R. 157, the court found a conflict of interest, denied a petition for compensation for services and reimbursement of expenses and ordered all fees previously paid to the applicant to be returned to the estate. There, the conflict was found where the appointed debtor's attorney received payments from investors in the corporation used as payment for services rendered in connection with the bankruptcy proceeding. As in the instant case, at the time the contributions were made, it was understood that debtor's attorney would reimburse the individuals when he received fees through the bankruptcy court. "When an attorney is retained by a corporation, his responsibilities and loyal-

ties are to the corporation and not to individual employees, officers, or directors of the company." 42 B.R. at 162. "Taking compensation from an individual officer poses a substantially greater temptation for the debtor's attorney to deviate from his duty of undivided loyalty to his client, the corporate debtor." *In re WPMK, Inc., supra,* 42 B.R. at 162, citing *In re Holiday Mart, Inc.,* Bk. No. 77–00565 (Hawaii, October 10, 1980).

Similarly, the court held in *In re Bergdog Productions of Hawaii, Inc., supra,* 7 B.R. 890, that an attorney to be retained by the debtor would have a conflict of interest by taking payment from stockholders of the debtor and by obtaining a guarantee of further payments from those individuals for services rendered to the debtor. Again, in an agreement similar to that here, the stockholders were to be reimbursed from any compensation awarded by the court. The debtor's application for authority to retain the attorney was denied.

> The rule that an attorney may not by his contract of employment place himself in a position where his own interests or the interest of another, who he represents, conflict with the interests of his client, is founded upon principles of public policy. It is designed to serve various purposes, among them, to prevent the dishonest practitioner from fraudulent conduct, to preclude the honest practitioner from putting himself in a position where he may be required to choose between conflicting duties or between his own interests and those of his client, to remove from the attorney any temptation which may tend to cause him to deviate from his duty of enforcing to the full extent the right of his client, to further the orderly administration of justice, and to foster respect for the profession and the courts.

*In re Bergdog Productions of Hawaii, Inc., supra,* 7 B.R. at 891–92, quoting *Gillette v. Newhouse Realty Co.,* 75 Utah 13, 282 P. 776 (Utah 1929).

## B. Dual Representation

A second issue arises from the dual representation by Mr. Dubitzky of Mr. Woeck and MP & E long before the receipt of the retainer and even before the first formal appearance of Mr. Dubitzky on behalf of both defendants. For the reasons discussed above, a conflict arose well before that date and Mr. Dubitzky should have either assured that he would not be placed in a position of conflicting dual representation, should not have sought appointment by this court if a conflict already existed— or at the very least, disclosed the conflict to the court at that time, whether actual or potential.

Mr. Dubitzky's application states his opinion that "every action performed on behalf of the debtor will benefit Richard Woeck and vice versa" and he argues that all of the services of his office benefited MP & E. However, despite the fact that "the interests of a debtor corporation overlap to some degree with the individual interests of its chief operating officer and its shareholders. The corollary is that the corporate and individual interests sometimes also conflict." *In re Bergdog Productions of Hawaii, Inc., supra,* 7 B.R. at 892.

In support of his efforts to limit the scope of the subpoena *duces tecum* because of the privilege afforded corporate record custodians, Mr. Dubitzky submitted an opinion letter by Professor John Strait of the University of Puget Sound School of Law which Industrial Indemnity characterizes as unsworn testimony. However, assuming the admissibility of the Strait letter, it must be pointed out that Mr. Strait states his assumption that Mr. Dubitzky "retained the service of an independent attorney for the representation of those individual officers and employees of Marine Power who were subpoenaed to appear before the grand jury. In association with that attorney, [Mr. Dubitzky] interviewed each witness who appeared before the grand jury as well as conducting [his] own independent investigation of the facts." This assumption is not supported by the record, which does not evidence that there

was such an independent retainer of separate counsel for each corporate officer. In any event, Mr. Strait notes the entry of an appearance by Mr. Dubitzky on behalf of both MP & E and Mr. Woeck. The opinion letter nowhere addresses the conflict of interest issue directly. Likewise, Mr. Strait's conclusions do not admit or examine the possibility of the debtor estate proceeding on a course different from that of the officers: such as cooperating with the government; or, as indicated above, because of the low priority of the government's claims, choosing not to contend; or seeking a stay of proceedings. Neither the argument of Mr. Dubitzky nor the contents of the opinion letter treat the reality of immunity or plea bargains which may be sought by, proffered, or granted a co-defendant. The letter does not address itself to the need for an independent examination by an attorney solely concerned with the corporate interest, whose loyalty was unaffected by concern for an individual officer's interest.

Co-defendants not infrequently find themselves in an adversary posture. *See, e.g. U.S. v. RMI Co.,* 467 F.Supp. 915 (W.D. Pa.1979) (conflict of interest in joint representation of corporation defendant and corporate employees who asserted Fifth Amendment privilege and who had been granted immunity).

> The potential for conflict of interest in representing multiple defendants in a criminal case is so grave that ordinarily a lawyer should decline to represent more than one codefendant. On the other hand, common representation of persons having similar interests is proper if the risk of adverse effect is minimal and the requirements of paragraph (b) are met.[4]

ABA Model Rules of Professional Conduct, Rule 1.7 comment.

4. ABA Model Rules of Professional Conduct, Rule 1.7(b) provides:

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

## V. COMPENSATION

■ A court may deny compensation and reimbursement even in the absence of a finding of an *actual* conflict of interest.

Finally, Applicant's argument that the court cannot deny the compensation and reimbursement sought herein without first finding an *actual* conflict of interest is not supported by the greater weight of case law within this jurisdiction. Time after time, in each of this court's decisions dealing with conflict of interest situations, the approval or denial of compensation has hinged upon whether or not the attorney was placed in a position of being required to choose between conflicting duties and interests. "It is no answer to say that fraud or unfairness were not shown to have resulted." *In re 765 Associates,* [14 B.R. 449, 451 (Bankr.Hawaii 1981)], quoting from *Woods v. City National Bank,* [312 U.S. 262, 61 S.Ct. 493, 85 L.Ed. 820 (1941)]. The public policy is to avoid even potentially conflicting situations.

*In re WPMK, Inc., supra,* 42 B.R. at 163. In this instance, however, actual conflict exists. It arises from dual representation, as discussed, as well as from the retainer from Mr. Woeck and the terms of the fee agreement.

■ The exercise of the denial of compensation under Section 328(c) of the Code is a matter of discretion with the court. *In re Haldeman Pipe & Supply Company, supra,* 417 F.2d 1302. *See also In re Coastal Equities, Inc., supra,* 39 B.R. 304; *In re Thompson, supra,* 54 B.R. 311. Attorneys fees may be denied even though the services rendered "had intrinsic value and brought a benefit to the bankruptcy estate." *In re Chou-Chen Chemi-*

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

**654**

*cals, Inc.,* 31 B.R. 842, 851 (Bankr.W.D.Ky. 1983).

We cannot agree with Mr. Dubitzky that the fee arrangement and joint representation would have been "totally appropriate, had debtor not been in bankruptcy." *See U.S. v. RMI Co., supra,* 467 F.Supp. 915. In any event, the debtor was in bankruptcy, and had become a fiduciary for its creditors, a fact which provides the specific legal context to be applied here. Mr. Dubitzky's unfamiliarity with the applicable provisions of the Bankruptcy Code cannot excuse his lack of compliance. The Bankruptcy Code provisions concerning conflict of interest find their counterparts in the codes of professional responsibility which govern the practice of law generally. Additionally, counsel are charged with knowledge of the law. *In re Kroeger Properties and Development, Inc.,* 57 B.R. 821 (Bankr. 9th Cir.1986).

Representation of clients with divergent interests who are subject to strong financial and personal pressures is a common incident to the practice of law. It is a fact of life that the stress and exigencies which attend these circumstances may distract from or attenuate considerations of propriety. But the rules which govern the conduct of counsel have their genesis in the need of courts and parties to be informed as to conflicts of interest so that they may be fairly dealt with, in reality and in appearance. The discretion exercised here is based on the principle that representation and conduct of a bankruptcy estate require the utmost sensitivity to actual or potential conflicts of interest, particularly on the part of its fiduciaries and of attorneys.

The court recognizes that the denial of fees for work already performed by counsel which arguably was performed in good faith may work a harsh result, but the issue is raised by failure of counsel to comply with standards relating to disclosure and dual representation at the time of his appointment as a representative of this estate or at any time prior to the application for compensation. The court finds and concludes that those standards were not met.

Mr. Dubitzky's application for fees and reimbursement of expenses is denied.

The foregoing constitutes the court's findings and conclusions pursuant to Bankruptcy Rule 7052.

It is so ORDERED.