In re DIAMOND LUMBER, INC., Case No. 387–32190–A–11, et al., and Akin, Gump, Strauss, Hauer & Feld, Appellants,

v.

UNSECURED CREDITORS' COMMITTEE OF DIAMOND LUMBER, INC., Appellee.

Civ. A. No. 3–87–2796–H.

United States District Court,
N.D. Texas,
Dallas Division.

June 16, 1988.

Robin E. Phelan and Judith Elkin, Haynes & Boone, Dallas, Tex., Dean M. Gandy, Jay L. Gueck, Marvin Mohoney, Akin, Gump, Strauss, Hauer & Feld, Dallas, Tex., for appellants.

George McElreath, Asst. U.S. Trustee, Vernon O. Teofan and Linda D. Sartin, Freytag, Petty, LaForce, Rubinstein & Teofan, Dallas, Tex., for appellee.

## MEMORANDUM OPINION AND ORDER

SANDERS, Acting Chief Judge.

Akin, Gump, Strauss, Hauer & Feld ("Akin, Gump"), former attorneys for the Debtors in this case, appeal an order of the Bankruptcy Court by which they were disqualified from representing the Debtors in these cases and were denied all compensation. For the reasons stated below the Court holds that the Bankruptcy Court abused its discretion in denying all compensation to Akin, Gump under 11 U.S.C. § 328. Specifically, the Court holds that the Bankruptcy Court abused its discretion in denying compensation for services provided after June 10, 1987, but acted within its discretion in denying compensation for services provided through June 10, 1987. The order denying compensation is, therefore, vacated and the cause remanded.

### I.

This is an appeal from a decision rendered by the Bankruptcy Court in a core proceeding. The Court has jurisdiction to decide the appeal pursuant to 28 U.S.C.

§ 158(a). The bankruptcy cases that are the source of this appeal were voluntarily commenced by the several debtors, which are all related companies and are now all debtors in possession under Chapter 11 of the Bankruptcy Code. The parent holding company, Michigan General Corp. ("Michigan General"), filed its petition on April 22, 1987. The subsidiaries filed their petitions on the following dates: Diamond Lumber, Inc. ("Diamond Lumber") filed on April 22, 1987; Michigan General Investment Corp. ("MGIC") filed on April 28, 1987; and Krestmark Industries, Inc. ("Krestmark"), Krestmark, Inc. ("Krestmark, Inc."), and Eastern Building Supply Company, Inc. ("Eastern Building") filed on May 8, 1987.

Akin, Gump represented each of the debtors both pre- and post-petition in connection with the bankruptcies. On May 12, 1987, the Bankruptcy Court *sua sponte* entered an Order to Show Cause Why Professionals Should Not Be Disqualified From Representation of Certain Debtors. In that order the bankruptcy court expressed its concern over Akin, Gump's representation of adverse interests, specifically the subsidiary companies and their equity holders, the parent company Michigan General.[1] Akin, Gump filed a memorandum in response to the Show Cause Order and a Supplemental Declaration pursuant to 11 U.S.C. § 327 and Bankruptcy Rule 2014 on May 29, 1987.

In the Supplemental Declaration Akin, Gump stated that Diamond Lumber and Krestmark may have pre-petition claims against Michigan General in the amounts of approximately $18 million and $5 million respectively. Akin, Gump also disclosed that it had represented the debtors for approximately three and one-half years before the bankruptcy filings and had received payments for those services, which were listed by date and amount on an attached schedule. Finally, Akin, Gump revealed its close connection with and legal representation of a group of companies that had held 22.6% of Michigan General's equity securities on the filing dates of the debtors' bankruptcy petitions.

The Bankruptcy Court held a hearing on the Show Cause Order on June 1 and 2, 1987. On June 1st the Unsecured Creditors' Committee of Diamond Lumber ("Creditors' Committee") filed an Objection to the Continued Representation by Akin, Gump of Diamond Lumber. Counsel for the Creditors' Committee, which is the appellee here, also appeared at the hearing and objected there to Akin, Gump's continued representation of the debtors. The United States Trustee objected to Akin, Gump's continued representation of the debtors as general bankruptcy counsel, but asked the court to allow Akin, Gump to serve as special counsel to the debtors. Counsel for the Unsecured Creditors' Committee of Krestmark and RepublicBank Dallas, as Trustee for bondholders holding approximately 70% of the unsecured debt of the debtors' combined estates, both appeared at the hearing and supported Akin, Gump's continued representation of the debtors. The debtors themselves at no time objected to Akin, Gump's representation. Evidence was introduced at the June 1st hearing on the issues addressed in the Show Cause Order, the Supplemental Declaration, and the Objection filed by the Creditors' Committee. Counsel for all interested parties participated.

On June 9, 1987, the debtors filed a motion for a special examiner pursuant to 11 U.S.C. § 1104(b) to investigate and report on any facts relevant to the issues explored at the June 1st hearing. A hearing was held on June 10, 1987 at which the motion for appointment of an examiner was discussed. At that hearing the bankruptcy judge announced his decision to disqualify Akin, Gump as counsel for the debtors. The bankruptcy judge also stated his intention to approve Akin, Gump's employment as special counsel to assist in the investigation and employment of new counsel.[2] Ap-

---

1. The Bankruptcy Court's order was also addressed to the proposed accountant for the debtors, Arthur Andersen & Co. The Court subsequently allowed Arthur Andersen's employment, and that decision is not an issue in this appeal.

2. Pursuant to this statement, the Bankruptcy Court entered on July 2, 1987 an Order Appoint-

parently the judge also directed Akin, Gump to continue as general counsel for Krestmark, Krestmark, Inc., and Eastern Building for the purpose of closing a pending sale of substantially all of the assets of those entities. *See* Excerpt of Proceedings June 10, 1987 at 15. As a result of the court's announcement that Akin, Gump was disqualified as debtors' general counsel no action was ever taken on the motion for appointment of an examiner.

On June 23, 1987 the Bankruptcy Court entered its formal memorandum opinion disqualifying Akin, Gump as counsel for the debtors. In that opinion the court denied all compensation to Akin, Gump, denied reimbursement of all out-of-pocket expenses not shown to have benefited the debtors' estates, and ordered Akin, Gump to place in the registry of the court all funds received in connection with representing the debtors. On July 3, 1987, Akin, Gump filed a Motion for Rehearing on the June 23, 1987 Memorandum Opinion. Subsequently, Akin, Gump filed a number of declarations in support of its arguments for rehearing.

On September 16, 1987, the Bankruptcy Court entered a Revised Memorandum Opinion reiterating the disqualification of Akin, Gump and the denial of all fees and expenses related to its representation of the debtors. *In re Michigan General Corp.*, 77 B.R. 97 (Bankr.N.D.Tex.1987). The Bankruptcy Court also entered a Memorandum Opinion on Motion for Rehearing on September 16, 1987. 78 B.R. 479. That opinion addresses in more detail than the Revised Memorandum Opinion the bases of the Bankruptcy Court's decision to deny fees. Akin, Gump and the debtors each filed a timely notice of appeal on September 25, 1987. The debtors, who have been ordered by the Bankruptcy Court to pay the expenses of the Creditors' Committee in this appeal, are no longer pursuing the appeal.

By its appeal Akin, Gump seeks a reversal of the Bankruptcy Court's order denying all compensation for services provided to the debtors. Akin, Gump states that it

ing Akin, Gump as Special Counsel effective

does not seek reinstatement as debtors' counsel, but asks this Court to review the Bankruptcy Court's disqualification order to the extent that it formed a basis for denying all compensation to the firm.

## II.

### A.

■ This Court reviews the factual findings of the bankruptcy court under a clearly erroneous standard. *Matter of Consolidated Bancshares, Inc.*, 785 F.2d 1249, 1252 (5th Cir.1986). The legal conclusions of the bankruptcy court are subject to *de novo* review. *Id.* However, under 11 U.S.C. § 328, the bankruptcy court has broad discretion to deny compensation, and the bankruptcy court's decision in that regard will be disturbed on appeal only upon a showing of abuse of discretion. *Id.*

■ As the Bankruptcy Court correctly noted, in order to qualify to represent the debtor in possession, an attorney must be disinterested and must not hold or represent an interest adverse to the estate. 11 U.S.C. § 327; *see, e.g., Consolidated Bancshares*, 785 F.2d at 1256. The bankruptcy court may deny compensation if at any time during the case the debtor's attorney becomes interested in or holds or represents an interest adverse to the estate. *E.g., Consolidated Bancshares*, 785 F.2d at 1256.

■ The Bankruptcy Court also mentioned in its published opinion and explained more thoroughly in its Memorandum Opinion on Motion for Rehearing an additional obligation imposed upon attorneys who represent debtors. Under Bankruptcy Rule 2014 and its predecessors, an attorney who seeks to represent the debtor must fully disclose at the time the application for employment is made all connections with the debtor, creditors, and other parties in interest. Fed.R.Bankr.P. 2014; *see, e.g., In re Arlan's Dept. Stores, Inc.*, 615 F.2d 925, 931–33 (2d Cir.1979); *In re Roberts*, 75 B.R. 402, 410 (D.Utah 1987); *In re Coastal Equities, Inc.*, 39 B.R. 304,

June 10, 1987.

308 (Bankr.S.D.Cal.1984). All facts that may be relevant to a determination of whether an attorney is disinterested or holds or represents an interest adverse to the debtor's estate must be disclosed to the court. *See, e.g., In re Arlan's*, 615 F.2d at 931–33; *In re Roberts*, 75 B.R. at 411; *In re Coastal Equities*, 39 B.R. at 308. The duty to disclose is so broad because the court rather than the attorney must decide whether the facts constitute an impermissible conflict of interest. *See In re Roberts*, 75 B.R. at 410–11; *In re Coastal Equities*, 39 B.R. at 308. The courts have consistently held that failure to comply with the disclosure requirement is an independent basis for denial of fees under 11 U.S.C. § 328. *See, e.g., Consolidated Bancshares*, 785 F.2d at 1256 n. 7; *In re Roberts*, 75 B.R. at 412 (D.Utah 1987).

### B.

The exact bases upon which the Bankruptcy Court relied in each of its two distinct decisions—to disqualify Akin, Gump as debtors' counsel and to deny Akin, Gump all compensation—are not clear from the court's opinions. It appears to this Court that the Bankruptcy Court concluded that Akin, Gump was not qualified to represent the debtors for several reasons. First, the court found that Akin, Gump was an insider and as such was not disinterested. 77 B.R. at 101. Second, the Bankruptcy Court held that Akin, Gump represented creditors and equity holders who were materially adverse to the debtors' estates.[3] *Id.* at 101, 104–06. Third, the Bankruptcy Court held that due to the firm's receipt of a large potentially avoidable preferential transfer Akin, Gump held an interest materially adverse to the debtors' estates. *Id.* at 101–02, 104. Finally, it appears to this Court that the Bankruptcy Court placed great emphasis on its conclusion that Akin, Gump willfully failed to disclose to the court all connections among itself, the debtor, creditors, and other parties in interest in the bankruptcy. *Id.* at 102, 106; Opinion on Rehearing at 3.

■ Because Akin, Gump is not seeking reinstatement as counsel for the debtors, the issue of whether the Bankruptcy Court erred in disqualifying Akin, Gump is not before this Court. The Court finds it unnecessary to reach that issue in reviewing the bankruptcy court's decision to deny Akin, Gump all compensation because the Court holds that regardless of the correctness of the decision to disqualify, the failure of Akin, Gump to disclose key facts known to it at the time of the firm's appointment as counsel to the debtors supports a denial of Akin, Gump's fees and expenses through June 10, 1987.

In reaching this conclusion the Court relies solely on Akin, Gump's failure to timely and thoroughly disclose the details surrounding the pre-petition payments made to Akin, Gump on behalf of the debtors. The existence of these payments was disclosed almost in passing by Akin, Gump in the Supplemental Declaration the firm filed on May 29, 1987. The Supplemental Declaration stated:

> Akin, Gump acted as counsel for Michigan General Corporation ("MGC") since 1983. Each of the other debtors is, directly or indirectly, a wholly-owned subsidiary of MGC. During the approximately three and one-half years that

---

**3.** The Court notes that the bankruptcy court found as fact that Marshal Cogan, a client of Akin, Gump, is the utimate equity holder of the debtor entities. 77 B.R. at 102. The Court holds that this finding is clearly erroneous. Cogan is the controlling shareholder of Knoll International Holding Company ("KIHI"), which is the parent company of a group of companies, one of which held 22.6% of Michigan General's equity securities as of the filing dates of the debtors' bankruptcy petitions. The record discloses uncontroverted evidence that the KIHI group completed divestiture of its ownership interest in Michigan General on June 1, 1987.

The shares of stock were sold to a corporation controlled by the chairman of the board of Michigan General in exchange for a promissory note. Thus, there is absolutely no evidence in the record to support the bankruptcy court's finding that Cogan is the ultimate equity holder of the debtor entities. Likewise, there is no evidence in the record to support the bankruptcy court's conclusion that the transfer of stock by which the KIHI group divested itself of Michigan General's stock was "a technical device having more form than substance." 77 B.R. at 105.

Akin, Gump has represented MGC, Akin, Gump has regularly billed MGC for legal services rendered; and MGC has made payments to Akin, Gump in the ordinary course of business, each in the amounts listed on Schedule 1 attached hereto.

Supplemental Declaration By Attorneys for the Debtors, filed May 29, 1987 at 1–2. Schedule 1 is a four page chronological list of billings and payments in several accounts maintained by Akin, Gump for billing Michigan General. Page two of the Schedule reveals an April 21, 1987 payment to Akin, Gump in the amount of $347,-349.03.

The essentially buried revelation of an unusually large payment to Akin, Gump on the account of Michigan General one day before Michigan General filed its petition in bankruptcy was found by the Creditors' Committee and prompted the Committee to inquire further. A large percentage of the evidence adduced at the June 1st and 2nd hearing related to this pre-petition payment. The evidence, delineated below, was developed by the Creditors' Committee as a basis for disqualification of Akin, Gump as counsel for the debtors. The Creditors' Committee asserted and continues to assert that the pre-petition payments were avoidable preferential transfers under 11 U.S.C. § 547. If the transfers are ultimately proven to have been avoidable under § 547, then Akin, Gump would have a claim against the debtors for the amount of the transfers and, therefore, would be an unsecured creditor. The Creditors' Committee argues that the possibility of such a determination gives Akin, Gump an interest adverse to the debtors' estates and thereby disqualifies them as debtors' counsel under 11 U.S.C. § 327(a).

The evidence is undisputed that on April 21, 1987 Akin, Gump received a payment on the account of Michigan General in the amount of $347,349.03. Approximately $300,000 of the payment was sent by wire transfer; the remainder was sent by check, which was immediately exchanged for a cashiers check. Uncontroverted evidence presented at the hearing discloses that on April 16, 1987 the board of directors of Diamond Lumber passed a resolution directing that Akin, Gump be retained to represent the company in connection with any bankruptcy proceedings and directing that payment be made to Akin, Gump in order to "eliminate any possible conflict of interest between such law firm as a creditor of the Company and as its counsel." Transcript of June 1st and 2nd, 1987 Hearing at 66. The evidence is also undisputed that the management committee of Akin, Gump adopted a resolution that "if for any reason the payments made to Akin, Gump were finally and properly determined to be a preference, Akin, Gump would then waive the unsecured claim which it would have as a result of that determination...." *Id.* at 73.

This Court need not and does not rule either on whether these pre-petition payments are avoidable under 11 U.S.C. § 547 or on whether receipt of these payments by Akin, Gump gives them an interest sufficiently adverse to the debtors' estates to preclude them from serving as debtors' counsel. The Court is concerned only with the fact that Akin, Gump did not reveal the details of the payments to the Bankruptcy Court. The Court holds that this is indeed an egregious omission that justifies a denial of compensation.[4]

Akin, Gump points out that the Bankruptcy Code expressly states that an attorney is not disqualified from employment by a debtor in possession solely because the attorney represented the debtor prior to the bankruptcy. 11 U.S.C. § 1107(b). From that clearly correct beginning Akin, Gump goes on to argue that nearly every firm that has represented a pre-petition

---

4. Other disclosure related issues have been raised by the Creditors' Committee and the bankruptcy court, which primarily involve the tardiness of Akin, Gump's disclosure of certain facts and relationships in its May 29, 1987 Supplemental Declaration. The Court finds it unnecessary to reach these issues, but notes that its concern with the disclosure of the pre-petition payment facts does not stem from the fact that disclosure was late. Rather, the Court is primarily concerned that even when Akin, Gump did disclose the payments, it did so in a less than forthcoming manner.

debtor will have received payments during the statutory preference period. Thus, Akin, Gump reasons, to permit an opponent to use the threat of litigation over pre-petition payment for legal services to disqualify counsel would be contrary to legislative intent, hamper bankruptcy case administration, and untenably interfere with a debtor in possession's choice of counsel.

■ These arguments are addressed to the disqualification issue, not the disclosure issue. The Court need not decide whether on the facts before it disqualification was justified. The Court simply holds that any large or unusual payments by a debtor to its counsel within the preference period are relevant to a conflicts analysis and therefore warrant scrutiny by the bankruptcy court when approval is sought to employ pre-petition counsel post-petition. Disclosure is essential because the conflicts determination is for the court and cannot properly be made unilaterally by the parties. *See In re Roberts*, 75 B.R. 402, 411 (D.Utah 1987) ("To the extent actual or potential conflicts are not disclosed, the court is prevented from exercising its statutory obligation to rule on the propriety of the employment.").

Akin, Gump should have known that the details of the pre-petition payments were the type of facts that must be disclosed to the bankruptcy court in an application for employment of professionals. The Court assumes that Akin, Gump's actions were wholly innocent.[5] Nevertheless, Akin, Gump failed to disclose facts known to it that were unmistakably relevant to the Bankruptcy Court's determination of whether the firm was qualified under 11 U.S.C. § 327 to represent the debtors. The Court holds that the Bankruptcy Court did not abuse its discretion by denying Akin, Gump all compensation for services rendered through June 10, 1987.

### C.

■ The Bankruptcy Court's denial of fees extended beyond June 10, 1987, however, and it is in this regard that the Court

holds that the Bankruptcy Court exceeded the scope of its discretion. A thorough review of the record indicates that all of the facts adverse to Akin, Gump were before the Bankruptcy Court as of the June 10th hearing at which the appointment of a special examiner was discussed. By the date of the June 10th hearing the Bankruptcy Court had already decided that it would disqualify Akin, Gump as counsel for the debtors. Excerpt of Proceedings June 10, 1987 at 9. After announcing that decision, the Bankruptcy Court, upon the recommendation of the United States Trustee, agreed to appoint Akin, Gump as special counsel, effective immediately, to assist in the investigation and employment of new counsel. *Id.* at 15. In addition, the Bankruptcy Court directed Akin, Gump to continue as general counsel for the Krestmark entities so that the firm could do the work necessary to close the sale of those entities' assets. *Id.*

It appears to this Court that by its rulings from the bench on June 10, 1987, the Bankruptcy Court, despite its decision to disqualify Akin, Gump as general ongoing counsel for the debtors, specifically authorized Akin, Gump to continue to provide legal services to the debtors on certain matters. Nevertheless, on June 23, 1987, in its written memorandum opinion on the disqualification issue, the Bankruptcy Court denied all compensation to Akin, Gump and advised the firm not to bother submitting an application for compensation. To the extent that the Bankruptcy Court's order denies compensation to Akin, Gump for services rendered after June 10, 1987, the Court holds that it is an abuse of the Bankruptcy Court's discretion.

On June 10, 1987 with full knowledge of the facts adverse to Akin, Gump, the Bankruptcy Court specifically authorized the firm to provide certain services to the debtors. Akin, Gump was justified in relying on the court's rulings as authorizing the firm to go on with its representation of the debtors to consummate the Krestmark sale, to assist in the employment of new counsel, and to provide those services nec-

---

**5.** The Bankruptcy Court alluded in this case to artifice and lack of disclosure employed by Akin, Gump to gain unfair advantage. 77 B.R.

at 106. This Court has found absolutely no evidence of deceit in the record and notes that none is alleged by the Creditors' Committee.

essary to assure an orderly transition of counsel for the debtors. It would be completely inequitable to refuse to compensate Akin, Gump for those services.

On remand Akin, Gump may apply for compensation for services rendered pursuant to the Bankruptcy Court's June 10, 1987 bench rulings. Akin, Gump will bear the burden of establishing the value of its services, and the Bankruptcy Court will hold an evidentiary hearing on the application if there are disputed issues of fact pertaining to the nature and extent of Akin, Gump's services. *Matter of Consolidated Bancshares,* 785 F.2d 1249, 1257 (5th Cir.1986); *Matter of U.S. Golf Corp.,* 639 F.2d 1197, 1207 (5th Cir.1981). The Bankruptcy Court will then evaluate the fee application in light of the *Johnson v. Georgia Highway* criteria as further developed in *In re First Colonial Corp. of America,* 544 F.2d 1291, 1298–1301 (5th Cir.), *cert. denied,* 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977).

This case is REMANDED for further proceedings.

SO ORDERED.