**In re CHURCHFIELD MANAGEMENT & INVESTMENT CORPORATION, Debtor.**

**Bankruptcy No. 84 B 7409.**

United States Bankruptcy Court, N.D. Illinois, E.D.

May 9, 1989.

David J. Fischer, Wildman, Harrold, Allen & Dixon, Chicago, Ill., for Boulevard Bank.

Michael L. Molinaro, Katten, Muchin & Zavis, Chicago, Ill., for trustee.

Dean Harvalis Office of the U.S. Trustee, Chicago, Ill., U.S. trustee.

MEMORANDUM OPINION AND RULING ON APPLICATION FOR FEES AND EXPENSES OF DOZORYST, BRUSTEIN, NEUMAN & MARKS

JACK B. SCHMETTERER, Bankruptcy Judge.

A history of this case is set forth in this Court's opinion of March 7, 1989 with re-

spect to several other fee applications. 98 B.R. 838 (N.D. Ill.)

A hearing was held on this application and evidence taken. Based on the record of proceedings in this case, and said hearing, this Opinion will stand as Findings of Fact and Conclusions of Law. For reasons stated below, the instant application is entirely denied and all interim payments are ordered to be repaid to the Trustee.

### A. *History of Applicant*

On June 18, 1984, this Court entered an order authorizing the employment of the law firm of Dozoryst, Cosby and Brustein (DC & B), as well as Nicholas Dozoryst, Richard Cosby, Abraham Brustein and other individual attorneys of that firm. The firm represented Churchfield as the Debtor in Possession in this proceeding under Chapter 11 of the Bankruptcy Code. Subsequently, Daniel C. Pelliccioni was initially appointed trustee for the limited purposes of replacing Churchfield in its capacity as a general partner in certain limited partnerships. Later he was appointed as fully empowered Chapter 11 Trustee following a long hearing and over the vigorous opposition of the debtor and applicant counsel.

On or about August 31, 1985, the firm of DC & B was dissolved due to the departure of one of the individual partners, Mr. Richard Cosby. The law firm of Dozoryst, Brustein, Neuman and Marks (DBN & M) succeeded the law firm of DC & B. Except for Mr. Cosby, the attorneys of DBN & M who had been representing the Debtor continued to represent Churchfield as Debtor in Possession with the knowledge of the Court and parties.

For reasons described hereinbelow, DBN & M and its attorneys pledged their instant claim for fees and expenses herein as security for loans to that firm from Boulevard Bank (the "Bank"). The Bank would receive any proceeds awarded on this Application since that loan to DBN & M is in default.

### B. *Applicant's Fee Request*

Pursuant to this Court's First Interim Fee Order, interim fees totalling $133,327 were provisionally approved for attorneys in the firm of Dozoryst, Cosby & Brustein.

From this amount was deducted the $17,-300 retainer already received. Seventy-five percent of the remaining amount was allowed for payment ($87,020.25). Expenses totalling $2,600.12 were also allowed for payment. However, of the amounts allowed for payment, Applicant has only received $29,023.24 in addition to the $17,-300.00 retainer originally received, a total of $46,023.24.

A Second Application was filed December 8, 1986, and has not yet been ruled upon. Such Application requests $524,-204.00 in fees and $17,685.38 in expenses for the period of April 1, 1985 through August 31, 1986.

A Third and Final Application was filed on July 29, 1988. This Final Application requests $571,863.00 in expenses and $33,-448.08 in expenses. The time period covered by the Application is not expressly stated, however, it contains daily time entries from May 31, 1984 through March 2, 1987. Therefore it appears the Application covers the full term of employment by attorneys of DC & B and DBN & M on Churchfield's behalf.

### C. *Applicant's Conflicts of Interest and Conversion of Estate Assets*

#### 1. Use of Client Trust Fund Account

Beginning at least as early as March 1986, DBN & M obtained custody and control of certain net proceeds resulting from the sale of properties owned by Churchfield or by partnerships in which Churchfield was still serving as a general partner. The proceeds from these sales were deposited into the client fund account of DBN & M at North Bank. During the period from March 1, 1986 to December 31, 1986, the deposits made into DBN & M's client fund account from sales of Churchfield partnership properties totalled at least $850,000. Included in that account among other deposits were the following proceeds belonging to the Debtor:

1. On or about March 4, 1986, Daniel C. Pelliccioni, in his capacity as trustee serving as the general partner in Churchfield Properties Partnership IV issued a check to Churchfield in the amount of

$81,698.14. Said check was deposited into the DBN & M client fund account on or about March 6, 1986.

2. On or about March 4, 1986, Daniel C. Pelliccioni, in his capacity as trustee serving as the general partner for Churchfield Properties Partnership II issued a check to Churchfield in the amount of $81,615.37. Said check was deposited into the client fund account of DBN & M on or about March 6, 1986.

3. On or about April 30, 1986, Mr. Pelliccioni, in his capacity as trustee serving as the general partner for Churchfield Properties Partnership IX issued a check in the amount of $328,000 to Churchfield. This check was deposited into the client fund account of DBN & M.

Shortly after receiving the foregoing deposits, DBN & M transferred approximately $50,000 from its client trust fund account into the DBN & M operating account at North Bank. The transfer was made solely for the purpose of providing funds to sustain the firm operations and payroll of DBN & M. During the period from March, 1986 through at least August 31, 1986, DBN & M regularly transferred funds from its client trust account into the law firm's operating account in order to sustain the operations and payroll expenses of that law firm. Substantially all of the funds thereby transferred belonged to Churchfield or Churchfield's related partnerships. The law firm did not receive permission from the Debtor or this Court to do so. At least some evidence suggests that Mr. Dozoryst ordered the transfers and that other partners may have been kept in the dark as to details of firm finances. However, it is clear that all firm partners benefited from this unlawful method of keeping the firm financially afloat.

In short, DBN & M and its lawyers converted to its and their own use and benefit large sums of money of this estate. As a result of those unauthorized transfers and conversions of the Debtor's assets, evidence showed that DBN & M owed the Debtor at least $250,000 and probably more by the end of August, 1986. The U.S. Trustee alleged that as much as $665,000 in Debtor's funds was improperly used by DBN & M. No purpose would have been served to extend the hearing to complete proof of the full extent of that. Once it was established that Debtor's counsel had converted more than a quarter million dollars of Debtor funds in order to operate the law firm, there was no need to ascertain the exact amount of converted funds before ruling on that counsel's fee application. The facts that were proved were quite shocking enough.

Following a long hearing on Motion to appoint a Chapter 11 Trustee, on August 20, 1986, this Court directed the United States Trustee to appoint a trustee with full powers and responsibilities under the Bankruptcy Code. DBN & M had on behalf of Debtor vigorously resisted that motion and appointment. Over the period that the Motion was resisted, the conversions of Debtor's moneys were taking place.

The United States Trustee appointed Mr. Pelliccioni as fully empowered trustee. Upon his appointment, DBN & M was required by law to turn over to Mr. Pelliccioni all funds which it was holding in trust on behalf of the Churchfield estate. However, it delayed in doing so for two months. Various excuses were given at the time. DBN & M then hid from the Court, Trustee, and parties in interest the fact that it had converted Debtor's funds in order to operate the law firm and simply did not then have sufficient money to pay over to the Trustee.

On or about October 2, 1986, Boulevard Bank advanced the sum of $328,000 to DBN & M by increasing its line of credit arrangement with that firm. DBN & M simultaneously issued a check to Trustee Pelliccioni to pay over Churchfield funds in the amount of $327,941. As security for its advance to DBN & M, the bank took a pledge of the firm's claims for fees and expenses in this case as attorney for Debtor. On or about November 26, 1986, Mr. Dozoryst caused certain funds which were held by him in his capacity as trustee of certain non-related Chapter 7 cases to be transferred to the DBN & M client trust fund account. The amount latter transfers

totalled at least $125,000. Concurrent with those transfers, Mr. Dozoryst caused DBN & M to issue a check to Mr. Pelliccioni in the approximate amount of $110,000 in order to turn over additional Churchfield funds to trustee Pelliccioni which DBN & M had earlier secretly misappropriated. At the time, Mr. Dozoryst and the DBN & M firm did not disclose to the Court or Trustee the sources of those moneys or the desperate efforts to cover the earlier defalcations through bank borrowing and use of moneys from other estates.

This Court has been assured that the foregoing events have been brought to the attention of the United States Attorney.

### 2. Representation of Thomas Connelly

On or about February 16, 1984, Thomas J. Connelly, filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code in the Northern District of Illinois. This filing was about four months prior to the filing of Churchfield's voluntary petition. Connelly's petition was filed by his attorneys, Nicholas G. Dozoryst and Abraham Brustein, of the firm of DC & B. DC & B and DBN & M represented Connelly throughout his Chapter 7 proceedings from February 16, 1984 until the dismissal of that proceeding on or about June 12, 1986. The *Connelly* case was before this Judge. *See In re Connelly*, 59 B.R. 421 (Bankr.N.D.Ill.1986). The applicant firms asserted the Fifth Amendment in that case to shield Mr. Connelly from all questions concerning his personal assets and debts, as well as all questions concerning Churchfield. When that assertion was not properly supported, the case was dismissed.

The Churchfield Chapter 11 proceeding, which was filed by DC & B about four months after Connelly's filing, was not filed as a case related to Connelly's Chapter 7 proceeding. Furthermore, DC & B and its individual attorneys failed to disclose their representation of Thomas Connelly in their affidavit when they applied to this Court to be retained as attorneys for Churchfield in this proceeding.

Attorneys of DC & B and DBN & M failed to disclose that Connelly had been a controlling officer of Churchfield prior to inception of these bankruptcy proceedings. They also failed to disclose that Connelly's role with Churchfield may have violated a certain consent decree which Connelly had entered into with the Securities and Exchange Commission. Those facts were brought to the Court's attention by the U.S. Trustee and others.

During the course of this case, and through evidence at the fee hearing, it was established that prior to inception of this Chapter 11 proceeding, Mr. Connelly was at one or more times in fact a leading official of Churchfield, though his name or background did not appear at any time—as officer, director, or otherwise—on any of the Churchfield prospectuses or filings in this case. Indeed, the activity of Mr. Connelly with and through Debtor was significant in relation to class action litigation brought on behalf of this estate.

### 3. United States Trustee's Objections

The United States Trustee objects to all fees requested by DBN & M, including the fees previously awarded as interim compensation. The objection is made for two separate and distinct reasons.

.... First, beginning in March, 1986 and extending through the next several months during protracted litigation over the appointment of a trustee, DBN & M misused funds of Churchfield Management and Investment Corporation (Churchfield or the Debtor) as well as funds of the Churchfield partnerships. During this time period, DBN & M systematically and improperly transferred funds from its client trust funds accounts, which included substantial funds of Churchfield partnerships, to that firm's operating account, in order to fund the law firm's operation. Misuse of the Debtor's funds by counsel for the debtor in [possession] constitutes cause for denial and forfeiture of all fees.

Second, the Dozoryst firms held and maintained an interest materially adverse to the estate, by virtue of their personal representation of Thomas J. Connelly, Jr., III. The Dozoryst firms not only

failed to disclose the true relationship between Connelly and Churchfield, but they actively concealed the relationship while simultaneously representing both Connelly and the Debtor before this Court. Indeed, the Dozoryst firms attempted to secure immunity for Connelly in the course of his personal bankruptcy prior to any disclosure whatsoever concerning Connelly's involvement in the Churchfield proceeding.

### D. *Analysis of Conflict Law*

The Bankruptcy Code requires that an attorney who is employed by the debtor's estate must not hold or represent an interest adverse to the estate and must be a disinterested person. 11 U.S.C. § 327(a). Section 101(13) of the Bankruptcy Code sets forth five requirements that must be met in order for a person to be disinterested:

(13) "disinterested person" means that—

(A) is not a creditor, an equity security holder, or an insider;

(B) is not and was not an investment banker for any outstanding security of the debtor;

(C) has not been, within three years before the date of the filing of the petition, an investment banker for a security of the debtor, or an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the debtor;

(D) is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debtor or of an investment banker specified in subparagraph (B) or (C) of this paragraph; and

(E) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holder, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or an investment banker specified in subparagraph (B) or (C) of this paragraph, or for any other reason;

Bankruptcy Rule 2014(a) concerning employment of professional persons requires disclosure of:

[T]he specific facts showing the necessity for employment, the name of the person to be employed, the reasons for his selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, or any other party in interest, their respective attorneys and accountants.

Attorneys who seek employment under the Bankruptcy Code "owe a duty to disclose actual or potential conflicts of interest which may bear upon their qualifications as set forth therein." *In re Roberts,* 75 B.R. 402, 410 (D. Utah 1987); *See also, In re Thompson,* 54 B.R. 311, 317 (Bankr.N.D. Ohio 1985) affirmed, 77 B.R. 113 (N.D. Ohio 1987). Furthermore, "all facts that may be relevant to a determination of whether an attorney is disinterested or holds or represents an interest adverse to the debtor's estate must be disclosed to the court." *Diamond Lumber v. Unsecured Creditors' Committee,* 88 B.R. 773, 777 (N.D.Tex.1988). The bankruptcy court

... has no duty to search the file to determine for itself that a prospective attorney is not involved in actual or potential conflicts of interest. It is the attorney's duty to so inform the court.

*Roberts,* 75 B.R. at 410 citing 46 B.R. 815, 839 (Bankr. Utah 1985).

Lack of disclosure of relevant information necessary for an informed ruling on a debtor's application for employment of an attorney is an independent ground for denial of a fee application. *See, Diamond Lumber,* 88 B.R. at 777; *In re Marine Power & Equipment Co.,* 67 B.R. 643 (Bankr.W.D.Wash.1986); *In re Thompson,* 54 B.R. at 316; *In re Coastal Equities, Inc.,* 39 B.R. 304, 308 (Bankr.S.D.Cal.1984).

Even if all disclosure requirements are met at the time of appointment, under Code § 328(c) the court may deny compensation if the applicant later becomes interested in or represents or holds an adverse interest to the estate at any time during the case.

See, *Diamond Lumber*, 88 B.R. at 776; *In re Kendavis Industries International, Inc.*, 91 B.R. 742, 748 (Bankr.N.D.Tex. 1988).

The Supreme Court has stated, "[w]here an actual conflict of interest exists, no more need be shown in this type of case to support a denial of compensation." *Woods v. City National Bank and Trust Co. of Chicago*, 312 U.S. 262, 268, 61 S.Ct. 493, 497, 85 L.Ed. 820, *reh'g denied*, 312 U.S. 715, 61 S.Ct. 736, 85 L.Ed. 1145 (1941). *See also In re Georgetown of Kettering, Ltd.*, 750 F.2d 536, 540 (6th Cir.1984); *In re Guy Apple Masonry Contractor, Inc.* 45 B.R. 160, 167 (Bankr.Ariz.1984).

In the case *In re Marine Power & Equipment Co., Inc.*, 67 B.R. 643 (Bankr. W.D.Wash.1986), it was held that a court may deny compensation and reimbursement even in the absence of a finding of an actively harmful conflict of interest. The possibility of conflict may justify a court to deny compensation.

Finally, Applicant's argument that the court cannot deny the compensation and reimbursement sought herein without first finding an *actual* conflict of interest is not supported by the greater weight of case law within this jurisdiction. Time after time, in each of this court's decisions dealing with conflict of interest situations, the approval or denial of compensation has hinged upon whether or not the attorney was placed in a position of being required to choose between conflicting duties and interests. "It is no answer to say that fraud or unfairness were not shown to have resulted." *In re 765 Associates*, [14 B.R. 449, 451 (Bankr. Hawaii 1981)], quoting from *Woods v. City National Bank*, [312 U.S. 262, 61 S.Ct. 493, 85 L.Ed. 820 (1941)]. The public policy is to avoid even potentially conflicting situations.

*Marine Power*, 67 B.R. at 653, *quoting from, In re WPMK, Inc.*, 42 B.R. 157, 163 (Bankr.Haw.1984). Denial of compensation under § 328(c) is within discretion with the court. *Marine Power*, 67 B.R. at 653. *See also, In re Haldeman Pipe & Supply Co.*, 417 F.2d 1302 (9th Cir.1969).

■ Finally, attorneys fees may be denied in conflict situations even though the services rendered "had intrinsic value and brought a benefit to the bankruptcy estate." *Marine Power*, 67 B.R. at 653, *citing, In re Chou–Chen Chemicals, Inc.*, 31 B.R. 842, 851 (Bankr.W.D.Ky.1983).

Notwithstanding a conflict of interest, the court has equitable power to award a portion of the fees requested if mitigating factors are present. For example, in the case of *In re Costello*, 95 B.R. 594 (Bankr. S.D.Ill.1989), the court awarded fees to an attorney although a conflict of interest was found to be present. The court found that a portion of the attorney's work was directed toward preserving and protecting the assets of the estate in the absence of the trustee taking steps to do so. Fees were therefore allowed for the portion of services performed in the stead of the trustee and which benefited the estate. *See also, In re Kendavis*, 91 B.R. at 762.

■ No such mitigating factors are present here. Under the foregoing authority, DBN & M is not entitled to any fees for its work on behalf of the Churchfield estate. The firm failed to disclose its representation of Mr. Connelly when application for approval of employment in this case was made to the Court. It is now clear that such information was relevant to a determination of whether Applicant was disinterested. That lack of disclosure was itself ground to deny compensation.

A far more serious conflict of interest arose when the lawyers of Applicant took and converted to their use substantial funds of this Debtor from their client trust account. First, the firm grossly breached fiduciary duties owed to Debtor by converting Debtor's funds. Further, the law firm thereby became a secret debtor owing moneys to Churchfield. Therefore it was no longer a disinterested professional. Indeed, in gross violation of its fiduciary duties to the estate and its creditors, the firm resisted appointment of a receiver to the bitter end despite strong grounds shown for such appointment, in an evident effort to avoid disclosure of the conversions and need to repay the converted

funds. It is irrelevant that those funds were ultimately replaced. The seriousness of the law firm's actions cannot be stated strongly enough. Denial of all compensation is undoubtedly appropriate. No mitigating circumstances change or mitigate this result.

### E. *Boulevard Bank's Interest*

■ Between September 18, 1986 and December 2, 1986 Boulevard Bank advanced to the law firm approximately $635,000. As security for the loan, the firm pledged to the Bank, among other things, all accounts receivable arising out of fees charged and to be charged by members of the firm in these proceedings. The Bank contends that at no time during the period that it advanced funds to the firm against its receivables, did the lawyers disclose or was the Bank aware that the firm was improperly transferring client funds or representing clients with conflicting interests in this case. Furthermore, the Bank argues that the Court has wide discretion in approving or disapproving fees, and may recognize the equities of a case and award fees notwithstanding an attorney's misconduct. There is ample authority for the exercise of such discretion in the proper case, as this Court has ruled. *See In re Central Ice Cream Co.,* 59 B.R. 476, 491 (Bankr.N.D.Ill.1985) and cases cited.

No party has challenged the genuineness of the alleged pledge to Boulevard Bank. Such pledge is presumed valid.

The bank therefore stands in the Applicant's shoes, subject to all the uncertainties that lawyers themselves are subject to in bankruptcy when applying for fees. The bank surely knew when it took the pledge and loaned the money that such was its risky position.

Stepping into the shoes of the law firms, Boulevard Bank has no right to recover any amounts claimed on behalf of those attorneys. On the appalling facts found hereinabove, this court finds no reason to mitigate the harsh results of the general rule that requires complete loss of fees for conflict of interest and breach of fiduciary duties. Indeed, any attorneys that dip into debtor assets entrusted to them in order to finance their firm before fees are allowed to them will be awarded no fees from this Court in any case. Those who hope to benefit from those fees will fare no better. No exception exists in the law for the bank merely because it took the pledge of such fees in innocence of the wrongs by counsel.

### F. *Conclusion*

The applicant law firms and Boulevard Bank are denied all fees sought for the work done by those firms. Trustee will take reasonable steps to recover the interim allowances heretofore paid, and to report his efforts to do so to the Court within three months.

By separate order, the Trustee will be required to present a judgment order reflecting the ruling herein.