In re SERVICO, INC., et al., Debtors.

Bankruptcy No. 90–36655–BKC–AJC.

United States Bankruptcy Court,
S.D. Florida.

Jan. 14, 1993.

Harold D. Moorefield, Jr., Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., Miami, FL, for debtor.

Peter W. Homer, Greer, Homer & Bonner, P.A., Miami, FL, for Clark, Ladner, Fortenbaugh & Young.

## ORDER DENYING DEBTOR'S "MOTION TO DISGORGE COMPENSATION AND REIMBURSEMENT OF EXPENSES PAID TO CLARK, LADNER, FORTENBAUGH & YOUNG, TO IMPOSE DISCIPLINARY SANCTIONS FOR MISCONDUCT AND TO AWARD COMPENSATORY SANCTIONS"

A. JAY CRISTOL, Bankruptcy Judge.

THIS CAUSE was heard December 10, 1992 on the Debtor's "Motion to Disgorge Compensation and Reimbursement of Expenses Paid to Clark, Ladner, Fortenbaugh & Young ('CLF & Y'), to Impose Disciplinary Sanctions for Misconduct and to Award Compensatory Sanctions."

The Debtor argues that the relief sought by its motion is justified since CLF & Y has allegedly violated:

1) Florida Rule of Professional Conduct 4–1.7 ("Conflict of interest; general rule");

2) Florida Rule of Professional Conduct 4–1.9 ("Conflict of interest; former client");

3) an alleged duty of loyalty, independent of Rule 4–1.9(a); and

4) 11 U.S.C. § 327(e) ("Employment of professional persons") and F.R.Bankr.P. 2014 ("Employment of professional persons").

## FACTS

Prior to filing its bankruptcy petition, the Debtor engaged CLF & Y as its attorneys to represent it in certain non-bankruptcy legal matters regarding some of its Pennsylvania real estate. The Debtor made a payment to CLF & Y for these services about forty-eight days prior to filing its petition in Chapter 11. CLF & Y successfully completed the matters for which they were engaged and were compensated $18,804 in the normal course of the bankruptcy administration.

While the Chapter 11 reorganization continued and before CLF & Y was paid the administrative award of $18,804, CLF & Y accepted an engagement to represent J–T Investments ("JT") and Fernando Chang ("Chang") which, from the Debtor's perspective, was an effort by JT and Chang to torpedo the Plan. Quite possibly, it was. In any event, it was an effort clearly adverse to the position of the Debtor. A precise chronology of events follows:

8/1/90—Pre-petition payment from the Debtor to CLF & Y for its services (the "potential preference").

9/18/90—Debtor files bankruptcy petition.

1/8/91—Debtor requests that the Court appoint CLF & Y as *special* counsel. The Debtor's application for employment of CLF & Y states that CLF & Y was to be employed "to help resolve title matters in connection with the closing of the Lackawanna Station Royce Hotel and to solve title problems relating to the proposed contract of sale for the Scranton Hilton and to advise the purchasers as to the claims of the limited partners." Moreover, the Debtor's application states that CLF & Y "do not represent or hold any interest adverse to the Debtor or to its estate in the matters upon which they are to be engaged." Finally, in support of the Debtor's application, CLF & Y submitted an affidavit which disclosed the nature of its pre-petition representation of the Debtor, the amounts owed by the Debtor for its pre-petition services, the terms of its retainer agreement and stated that it did not represent or hold an interest adverse to the Debtor.

3/17/91—Order appointing CLF & Y as Debtor's *special* counsel, *nunc pro tunc*, to the date of the petition.

8/30/91—Order awarding CLF & Y compensation ($18,275) for services to Debtor.

1/29/92—CLF & Y completes services for Debtor.

5/7/92—Confirmation of Debtor's Plan (effective 8/5/92).

5/21/92—Final Order awarding CLF & Y compensation ($529) for services to Debtor.

6/1/92—CLF & Y, prior to being paid for its services to Debtor, commences representation of J–T and Chang who was a principal of JT. The Debtor objected to CLF & Y's representation of JT and Chang. Chang's past control of the Debtor was a primary cause of its bankruptcy. Consequently, under the Plan confirmed on 5/7/92, Chang's control of the Debtor was eliminated.

7/9/92—CLF & Y issues first letter, on behalf of JT, soliciting claims purchases from Debtor's largest unsecured creditors. This claims purchase solicitation and subsequent claims purchase solicitations do not disclose Chang's relationship with JT.[1] If the claims purchase solicitation were successful, Chang, through JT, would have once again controlled the Debtor.

7/14/92—Debtor files complaint to enjoin Chang's and JT's claims purchase solicitation.

7/15/92—CLF & Y issues second letter, on behalf of JT, soliciting claims purchases from Debtor's largest unsecured creditors.

7/23/92—Order denying injunctive relief but requiring court approval of the purchase of claims.

7/27/92—CLF & Y issues third letter, on behalf of JT, soliciting claims purchases from Debtor's largest unsecured creditors.

7/30/92—CLF & Y withdraws claims purchase solicitation.

8/5/92—Effective date of Debtor's Plan.

## ISSUE

Is the conduct of CLF & Y in their representation of JT and Chang a basis for requiring them to disgorge the fees earned from the Debtor and for imposing sanctions? The Court thinks not. But, on the other hand, their conduct is no great badge of honor either.

## CONCLUSIONS OF LAW

■ The Court has great latitude in determining the type of discipline to which an attorney who violates a Florida Rule of Professional Conduct is subject. *See, e.g.,* Rules of the United States District Court for the Southern District of Florida, Rules of Disciplinary Enforcement, Rule 4.[2]

■ 1. Florida Rule of Professional Conduct 4–1.7 ("Conflict of interest; general rule") provides, in part:

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to the interests of another client, unless:

(1) The lawyer reasonably believes the representation will not adversely affect the lawyer's responsibilities to and relationship with the other client; and

(2) Each client consents after consultation.

Rule 4–1.7 regulates conflicts of interest between existing clients, as opposed to former clients, which are regulated by Rule 4–1.9 (discussed below). Thus, Rule 4–1.7 can not be violated if the alleged conflict of interest does not involve an existing client.

■ CLF & Y argues that the Debtor was not an existing client on 6/1/92 when it commenced representation of JT and

---

1. The Debtor also alleges that the failure to disclose Chang's involvement with JT violates securities laws.

2. This rule provides:

A. For misconduct defined in these Rules, and for good cause shown, and after notice and opportunity to be heard any attorney admitted to practice before this Court may be disbarred, suspended from practice before this Court, reprimanded or subjected to such other disciplinary action as the circumstances may warrant.

B. Acts or omissions by an attorney admitted to practice before this Court ... which violate the Code of Professional Responsibility adopted by this Court shall constitute misconduct ... The Code of Professional Responsibility adopted by this Court is the Code of Professional Responsibility adopted by the highest court of the state in which this Court sits ...

Chang since it had ceased all work for the Debtor by 1/29/92 and had been awarded final compensation by the Court on 5/21/92 for its services to the Debtor. The Debtor argues that it was an existing client on 6/1/92 when CLF & Y commenced representation of JT and Chang since nothing in CLF & Y's final fee application, final fee order or other writings indicates that the Debtor was no longer a client, and, since CLF & Y had not received final payment for its services to the Debtor at the time it commenced representation of JT and Chang. The Court finds that, even though CLF & Y was a creditor of the Debtor, the Debtor was not an existing client since CLF & Y's engagement had been completed prior to 6/1/92 when it began representation of JT and Chang. Therefore, Rule 4–1.7 is not violated.

2. Florida Rule of Professional Conduct 4–1.9 ("Conflict of interest; former client") provides:

A lawyer who has formerly represented a client in a matter shall not thereafter:

(a) Represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or

(b) Use information relating to the representation to the disadvantage of the former client except as rule 4–1.6 would permit with respect to a client or when the information has become generally known.[3]

Rule 4–1.9(a) can not be violated if the matters forming the basis of the alleged conflict of interest are not, at least, "substantially related". The case law cited by the parties does not help resolve this issue.

■ CLF & Y argues that the claims purchase solicitation on behalf of JT is not even related, much less "substantially related", to the narrow real estate matters handled on behalf of the Debtor. The Debtor argues that the claims purchase solicitation on behalf of JT is "substantially related" to the services provided to the Debtor for the following reason:

Clark Ladner [CLF & Y] was part of Servico's professional team whose collective goal was to facilitate Servico's reorganization, the product of which was the issuance of Reorganization Securities to Servico's unsecured creditors. There exists a substantial relationship between Clark Ladner's service which contributed to Servico's reorganization and its representation of another client who was attempting to acquire, without adequate disclosure, the product of that reorganization.

The Court finds that the CLF & Y's representation of JT and Chang is not substantially related to CLF & Y's representation of the Debtor.

The key word here is "substantially." Without a question, there is a relationship. The Debtor makes an excellent and rational argument that the relationship is substantial. If CLF & Y had been engaged to perform services related to the reorganization, such as preparing the Plan or the Disclosure Statement, moving to assume or reject leases, suing to recover preferences or fraudulent transfers or any other bankruptcy activity, CLF & Y would be standing in the sewer. However, CLF & Y's work on the Debtor's assets was not bankruptcy work per se. It is easy to appreciate the Debtor's feeling that CLF & Y's work for it and JT and Chang are substantially related since the work for it contributed to its reorganization (by enhancing the value of the Debtor's property) and the work for JT and Chang had the potential to torpedo its reorganization. However, this Court is not willing to make this leap (perhaps some appellate court may decide otherwise). Therefore, Rule 4–1.9(a) is not violated.

■ 3. The Debtor also argues that CLF & Y has violated an alleged duty of loyalty which exists in addition to the language of Florida Rule of Professional Conduct 4–1.9(a). In support of this proposition, the Debtor cites *Brent v. Smathers,*

---

3. At the hearing, the Debtor neither argued, nor presented evidence to establish, a violation of Rule 4–1.9(b) by CLF & Y. Consequently, this issue will not be considered.

529 So.2d 1267 (Fla. 3rd DCA 1988). Although the *Brent* court refers to a duty of loyalty, it does so for the purpose of distinguishing between Rules 4–1.9(a) and 4–1.9(b). *Brent* does not stand for the proposition that there is a duty of loyalty in addition to the one imposed by the language of Rule 4–1.9(a). Moreover, such a vague duty of loyalty would render meaningless the specific language set forth in Rule 4–1.9(a). Thus, the letter and spirit of Florida Rule of Professional Conduct 4–1.9(a) coincide—they are not distinct.

■ 4. Finally, the Debtor argues that CLF & Y has violated 11 U.S.C. § 327(e) and F.R.Bankr.P. 2014 by failing to disclose the potential preference in its affidavit in support of the Debtor's application for employment of it as special counsel.[4] Two related issues are presented by the Debtor's argument. First, did the receipt of the potential preference by CLF & Y cause it to be unemployable pursuant to 11 U.S.C. § 327(e)? Second, did CLF & Y have a duty to disclose the receipt of a potential preference? Section 327 of Title 11 of the United States Code provides, in part:

**Employment of professional persons**

(e) The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

Rule 2014 of the Federal Rules of Bankruptcy Procedure provides, in part:

## EMPLOYMENT OF PROFESSIONAL PERSONS

**(a) Application for and Order of Employment.** An order approving the employment of attorneys ... pursuant to § 327 ... of the Code shall be made only on application of the trustee or committee. * * * * * * The application shall state the specific facts showing the necessity for the employment, the name of the person to be employed, the reason for selection, the professional service to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest ... The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest ...

CLF & Y argues that its receipt of the potential preference does not preclude it from being employed as special counsel pursuant to 11 U.S.C. § 327(e) since its receipt of the potential preference does not cause it to "hold any interest adverse to the debtor or to the estate with respect to the matter on which [it] is to be employed." The Debtor argues that the standard for approving special counsel set forth in 11 U.S.C. § 327(e) has been violated. In support thereof, the Debtor cites *Diamond Lumber v. Unsecured Creditor's Comm.*, 88 B.R. 773 (N.D.Tex.1988). However, *Diamond Lumber* is not analogous to the instant case since it involved the failure of general counsel, whose employment is governed 11 U.S.C. § 327(a), to disclose a potential preference of a significant amount. The Court agrees with CLF & Y that the standard for approving special counsel set forth in 11 U.S.C. § 327(e) has not been violated by its receipt of the potential preference. This finding is bolstered, with the benefit of hindsight, by the fact that even the Debtor has not complained of the quality of services it received from CLF & Y.

■ The remaining issue of whether CLF & Y had a duty, pursuant to F.R.Bankr.P. 2014(a), to disclose the potential preference to the Court is, now, easily resolved in the negative. Where the nondisclosure of a certain fact does not violate 11 U.S.C. § 327(e), there is no duty upon an applicant, pursuant to F.R.Bankr.P. 2014(a), to disclose that fact. However, the Court cautions those applying for employ-

---

**4.** This potential preference is now the subject of   a pending adversary action.

ment to err on the side of too much disclosure as a violation of an applicant's duty of disclosure may result in severe sanctions, including disgorgement.[5]

## CONCLUSION

The conduct of CLF & Y is certainly put in question. It is quick to argue that the appearance of impropriety test is no longer the law. That may be so. But what a shame that the need for law business is so dire that attorneys do not care if they give the appearance of evil or impropriety. No wonder the prestige of the profession takes such a beating in public opinion polls. Does the public want a skilled attorney who will fight ferociously for its client while it is being paid and next week fight with equal ferocity on behalf of the client's enemy against the client? CLF & Y, it appears, has walked so close on the edge of the sewer that it appears to have been splashed with sewage. Perhaps it has escaped the splash but Clark, Ladner, Fortenbaugh & Young cannot escape the smell. While their conduct may not support disgorgement in this case, it certainly does not pass the smell test. Accordingly, it is

ORDERED that

the Debtor's "Motion to Disgorge Compensation and Reimbursement of Expenses Paid to Clark, Ladner, Fortenbaugh & Young, to Impose Disciplinary Sanctions for Misconduct and to Award Compensatory Sanctions" is denied.

DONE AND ORDERED.

---

**5.** Even if the Court had found that CLF & Y had a duty to disclose its receipt of the potential preference, the sanctions CLF & Y would have been subject to would be mitigated. Here, the Debtor knew about the potential preference at the time of its application, did not disclose this fact on its application, stated that CLF & Y did not hold any adverse interest, and didn't complain about the potential preference until services were complete.